FILED

MAY 06 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                                )    BAP No.   CC-12-1304-TaMoMk
                                       )
MERUELO MADDUX PROPERTIES,             )    Bk. No.   09-13356-VK
INC.,                                  )
                                       )
            Debtor.                    )
_____)
                                       )
RICHARD MERUELO, individually          )
and as Trustee of the Richard          )
Meruelo Living Trustee U/D/T           )
dated September 15, 1989,              )
                                       )
            Appellant,                 )
                                       )
v.                                     )    **MEMORANDUM**[*]
                                       )
MERUELO MADDUX PROPERTIES,             )
INC.,                                  )
                                       )
            Appellee.                  )
_____)

Argued on February 21, 2013 at Pasadena, California
Submitted on February 28, 2013[**]

Filed - May 6, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Victoria Kaufman, Bankruptcy Judge, Presiding

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[**] At oral argument, the parties were given an additional week in which to file supplements that specifically identified certain evidence in the record on appeal. Submission of the matter was thus postponed for one week following oral argument.

1

Appearances:    Gregory M. Salvato of Salvato Law Offices on behalf of Appellant; Christopher E. Prince of Lesnick Prince & Pappas LLP on behalf of Appellee.

Before:  TAYLOR, MONTALI,[***] and MARKELL, Bankruptcy Judges.

## INTRODUCTION[1]

Reorganized debtor and Appellee Meruelo Maddux Properties, Inc. ("MMPI") and related reorganized debtors (collectively,

---

[***] The Honorable Dennis Montali, Bankruptcy Judge for the Northern District of California, sitting by designation.

[1] We exercised our discretion to independently review documents electronically filed in the Debtors' bankruptcy cases. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

In so doing, we determined that on April 7, 2009, the bankruptcy court ordered the joint administration of MMPI's bankruptcy case with 53 related bankruptcy cases ("Joint Administration Order"), and designated MMPI as the lead bankruptcy case, Case No. 09-13356. Dkt# 30. The Joint Administration Order instructed a claimant to file a proof of claim in the bankruptcy case directly subject to the claimant's claim. The Joint Administration Order also designated the MMPI docket as the single docket for all other main case documents in the jointly administered cases.

"Debtors")[2] objected to proofs of claim[3] (collectively, "Claims") filed by Appellant Richard Meruelo ("Richard")[4] and moved for disallowance. In the Claims, Richard sought indemnification for liabilities that he incurred in defending actions and proceedings based on guaranties that he executed for the benefit of the Debtors, for fees he incurred in connection with the Debtors' bankruptcies, and for payment on a judgment. The bankruptcy court granted the Debtors' motion and Richard appealed.

Here, we address only the issues related to the guaranty liabilities and bankruptcy legal fees. We decline to address the issue related to the payment on the judgment as it was not addressed by Richard in his statement of issues on appeal, in his opening or reply brief, or in a substantive fashion at oral

[2] The Notice of Appeal identified the appellee as "Meruelo Maddux Properties, Inc., et al. (the Reorganized Debtors)". For reasons not clear to us, in the present appeal the parties interchangeably and inconsistently refer to the appellee as MMPI (singular) and MMPI, et. al (multiple). We use the term "Debtors" to describe the appellees here. The term "Debtors" refers to all debtors who objected to one of the Claims. We also use the term broadly to describe them in their respective pre-confirmation and post-confirmation form as, given the context, is appropriate.

[3] Appellant submitted one proof of claim in MMPI's bankruptcy case and identical proofs of claim in six of the jointly administered bankruptcy cases.

[4] The Notice of Appeal identified the Appellant as Richard Meruelo, individually and as Trustee of the Richard Meruelo Living Trust U/D/T dated September 15, 1989. The instant appeal was concurrently heard with a separate appeal in which Richard Meruelo's mother, Belinda Meruelo, was the appellant. See BAP Case No. CC-12-1303. For clarity and ease of reference, and without intending any disrespect, we refer to the appellant as "Richard" in this memorandum.

3

argument.  Thus, we VACATE and REMAND in part and AFFIRM in part.

## FACTS[5]

On March 26, 2009, Debtors initiated chapter 11 bankruptcy cases (collectively, "Cases").  Richard previously served as MMPI's Chairman, CEO, and major shareholder.

On September 24, 2009, Richard filed the Claims.  In each of the Claims, Richard sought reimbursement and indemnification for incurred or anticipated liabilities.  He based the Claims on two pre-petition agreements: a Contribution Agreement dated September 19, 2006 and an Indemnification Agreement dated January 30, 2007 (collectively, the "Agreements").  Richard asserted that he had possible exposure to liability on guaranties that he executed for the benefit of seven different lenders or lessors ("Guaranties").  He further asserted that the Agreements contractually obligated the Debtors to indemnify him and to reimburse him in connection with any payment under or in connection with the Guaranties.

At some point, the parties holding the Guaranties threatened or initiated litigation.  Richard retained Neufeld Marks & Gralnek ("Neufeld") to represent him in his defense of these claims.  During the course of the Cases, Richard also retained Levene, Neale, Bender, Rankin & Brill ("Levene") as personal bankruptcy counsel.

Meanwhile, the Debtors moved for and obtained an order of

---

[5] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

4

the bankruptcy court that authorized the employment of professionals. The order allowing retention required that each retained professional submit a declaration of disinterestedness. As required, Neufeld submitted its declaration of disinterestedness and therein disclosed its concurrent representation of one or more of the Debtors. Neufeld, however, failed to disclose that it represented Richard in connection with the Guaranties.

The bankruptcy court confirmed a third party's plan in the Cases on June 24, 2011. The Debtors subsequently objected to proofs of claim for pre-petition legal services filed by Neufeld to the Debtors and moved for disallowance. The Debtors also objected to Neufeld's request for payment of an administrative claim for post-petition fees. The bankruptcy court heard all Neufeld fee related matters on March 1, 2012. The bankruptcy court determined, among other things, that Neufeld improperly failed to disclose its simultaneous representation of Richard (and other insiders) in non-bankruptcy proceedings and that, as a result of the concurrent representations, Neufeld was not disinterested for purposes of section 327(a). The bankruptcy court, thus, ordered Neufeld to disgorge fees previously received and denied its various requests for further payment.[6]

The Debtors also moved to disallow the Claims ("Motion to Disallow"). They argued that neither of the Agreements formed a

---

[6] In an order jointly addressing Neufeld's proofs of claim and administrative claim, the bankruptcy court ordered Neufeld to disgorge a $30,000 payment that it received from MMPI in February 2010 and a $100,000 payment that it received from Meruelo Maddux – 845 S. Flower Street, LLC in June 2010.

basis for Richard's reimbursement claims and that disallowance under section 502(e)(1)(B) was warranted because the Claims were contingent.  In response to the Motion to Disallow, Richard submitted an amended proof of claim in the MMPI case ("Amended Proof of Claim") and filed opposition.  In the Amended Proof of Claim, Richard reiterated that he was entitled to reimbursement and indemnification based on the Agreements and listed total claims in the amount of $316,294.39, consisting of three different categories of liabilities:

(1)  $151,453.53 in attorneys' fees paid to Neufeld on account of its representation of Richard in proceedings related to the Guaranties and in the Cases ("Neufeld Claim");

(2)  $142,224.48 in attorneys' fees paid to Levene on account of its representation of Richard in the Cases ("Levene Claim"); and

(3)  $22,526.38 on account of Richard's payment of a state court judgment against Richard and a related entity pursuant to a guarantied lease ("Nemiroff Claim").

Apparently, the Debtors failed to properly serve Richard with the Motion to Disallow.[7]  Consequently, the parties stipulated to a continuance of the hearing.  Pursuant to a subsequent bankruptcy court order, the Debtors submitted a supplemental memorandum ("Supplemental Brief") in support of the Motion to Disallow.  They renewed their prior objections and also asserted that Richard waived his indemnity rights under the terms

---

[7] At some point, Richard began appearing *pro se*; the Debtors, however, continued to serve his prior counsel.

6

of the Guaranties, which contained <u>Gradsky</u>[8] waivers. The Debtors also made other new arguments, including that Richard failed to comply with certain notice provisions in the Contribution Agreement, that the Indemnification Agreement did not encompass guaranty obligations, and that Richard was not entitled to indemnification for fees incurred in the Cases. The Debtors further argued that the Nemiroff Claim was unenforceable because Nemiroff failed to file a proof of claim, and that the Neufeld Claim should be disallowed based on the disallowance of the law firm's direct claims against the Debtors.

In opposition, Richard argued that based on his execution of new agreements with lenders and the Debtors in the Cases, the waiver argument was inapplicable as the new agreements paid the outstanding debt in full. He also asserted that the Debtors' other arguments relating to notice, scope of indemnity, and conflicts were irrelevant or lacked a legal basis.

The bankruptcy court heard the Motion to Disallow on May 11, 2012 and, after argument, granted it in its entirety. It disallowed the Levene Claim because the fees were not related to an indemnification purpose. It disallowed the Neufeld claim based on the law firm's prior disqualification in the Cases. Finally, it disallowed the Nemiroff Claim because the underlying Claim was unenforceable in the bankruptcy case.

On May 29, 2012, the bankruptcy court entered an order ("Disallowance Order") that sustained the Debtors' objections and disallowed the Claims. Richard timely filed his appeal.

---

[8] <u>Union Bank v. Gradsky</u>, 265 Cal. App. 2d 40 (1968).

7

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B).  We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court err in disallowing the Claims?

**STANDARD OF REVIEW**

We review the bankruptcy court's legal conclusions de novo, and its findings of fact for clear error.  See Allen v. US Bank, N.A. (In re Allen), 472 B.R. 559, 564 (9th Cir. BAP 2012).  The court's findings of fact are clearly erroneous if illogical, implausible, or lacking support from the record.  Retz v. Sampson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).  We review the bankruptcy court's Disallowance Order de novo.  Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 671 F.3d 1011, 1020 (9th Cir. 2012), cert. denied, 133 S. Ct. 119 (2012); see also Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.), 293 B.R. 489, 493 (9th Cir. BAP 2003) (issues related to disallowance are questions of law reviewed de novo).

Contract interpretation and the meaning of contractual provisions are reviewed de novo.  DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd., 268 F.3d 829, 836 (9th Cir. 2001).

**DISCUSSION**

On appeal, Richard argues that the bankruptcy court erred by: (1) failing to articulate the grounds for the disallowance under section 502(b); (2) finding that Richard was not entitled to indemnity under the Agreements; (3) finding that Richard was not entitled to indemnity for legal fees that he individually

incurred in the Cases; (4) finding that the Neufeld Claim was disallowed based on Neufeld's disqualification in the Cases; (5) finding that Richard's rights under the Agreements were waived by his payment of guarantied obligations; and (6) finding that the notice provisions in the Agreements barred Richard's claims.  We address these issues as follows.

**A.    Statutory grounds for disallowance of the Claims.**

Richard first argues that the bankruptcy court erred by failing to identify the statutory basis for disallowance.  In response, the Debtors maintain that the bankruptcy court properly disallowed the claims under California substantive law.

Section 502(b) provides that upon an objection to a claim by a party in interest, the bankruptcy court must allow and determine the amount of the claim, unless a statutory exception exists.  11 U.S.C. § 502(b).  It is well-established that section 502(b)(1)-(9) provides the exclusive grounds for the disallowance of claims.  Heath v. Am. Express Travel Related Servs. Co., Inc. (In re Heath), 331 B.R. 424 (9th Cir. BAP 2005). And, there is a general presumption that claims enforceable under applicable state law are allowed in bankruptcy unless expressly disallowed.  Travelers Cas. and Sur. Co. of Am. v.  Pac. Gas and Elec. Co., 549 U.S. 443 (2007) (citing 11 U.S.C. § 502(b)); see also Wells Fargo Fin. Acceptance v. Rodriquez (In re Rodriquez), 375 B.R. 535, 545 (9th Cir. BAP 2007) (unless there is a basis under section 502(b) to disallow, the bankruptcy court must allow the claim).

Here, the bankruptcy court did not identify the subsection of section 502(b) under which it disallowed the Claims.  The

9

bankruptcy court did not make findings in this regard, and the Disallowance Order simply and broadly provides that it is based on the papers filed by both parties and the hearing in the matter. The Debtors briefly refer to section 502(e)(1)(B) in the Motion to Disallow, but solely in relation to Richard's then-contingent claims. And in the Supplemental Brief, the Debtors refer to section 502(e)(1)(A), but solely in relation to the Nemiroff Claim. Based on the record, however, including Richard's own acknowledgment, it appears that the basis for the disallowance lies in section 502(b)(1). Therefore, we find no error in not identifying the applicable sub-paragraph of section 502(b).

Section 502(b)(1) provides that a claim is disallowed if it is unenforceable under an applicable agreement or law. Thus, our review here focuses on whether the Claims were enforceable under the Agreements and, if so, whether other non-bankruptcy law bars recovery.

**B. The record lacks findings necessary for interpretation of ambiguities in the Agreements.**

Richard contends that the Contribution Agreement provides indemnification to all contributors, including indemnification of Richard's obligations under the Guaranties. The Debtors maintain that the Contribution Agreement makes no reference to indemnification of such obligations. Instead, they assert that the Contribution Agreement solely indemnified Richard in the event that he was sued by a third party, based on the Debtors' breach of the terms of a particular transaction, and as to the properties that were the subject of that transaction.

10

The Contribution Agreement was entered into between MMPI and related entities[9] and pertained to the consolidation of ownership of various commercial and residential development and redevelopment projects. In relevant part, the Contribution Agreement provides:

> [MMPI] . . . shall indemnify and hold harmless [the related entities] and its directors, officers, employees, agents, representatives, beneficiaries, equity interest holders and Affiliates (each of which is an "Indemnified Contributor Party") from and against any and all Losses arising out of or relating to, asserted against, imposed upon or incurred by the Indemnified Contributor Party in connection with: (a) any breach of a representation, warranty or covenant of [MMPI] . . . contained in this Agreement . . . (b) [MMPI's]. . . operation of any Participating Entities or the Properties following the Closing, and (c) all of (i) the liabilities and obligations of the Participating Entities whether arising before or after the Closing . . . .

Contribution Agreement § 3.2.

Under its terms, California law governs interpretation of the Contribution Agreement. Under California law, a contract must be interpreted so as to give effect to the parties' intentions at the time that they entered into the contract. Cal. Civ. Code § 1636; see also Levy v. Ross, 269 Cal. App. 2d 231, 238 (1969). The Contribution Agreement defined "Participating Entities" as the commercial and residential development and redevelopment projects. The Claims clearly do not fall under either of the first two grounds for indemnification. The possibility of indemnity under the last subsection, however,

---

[9] Richard, as Trustee of The Richard Meruelo Living Trust U/D/T Dated September 15, 1989; Merco Group - Roosevelt Building, LLC; Sunstone Bella Vista, LLC; Meruelo Maddux Properties, L.P.; and Meruelo Maddux Properties, Inc.

11

exists. The language in subsection 3.2(c)(i), however, may permit more than one reasonable interpretation and we require an adequate factual record prior to conducting de novo review.

Richard similarly contends that the Indemnification Agreement provides a basis for indemnity from the Debtors. He maintains that it is now disingenuous for the Debtors to dispute that the fees and expenses he incurred in defending the Guaranties were not a result of his prior position with the Debtors. The Debtors counter that Richard's guaranty liabilities arose from agreements with third parties, and not because he was a director or officer of MMPI.

In relevant part, the Indemnification Agreement provides:

> [MMPI] hereby agrees to hold harmless and indemnify . . . [Richard], from and against any and all expenses (including attorneys fees), judgments, fines, taxes, penalties and amounts paid in settlement actually and reasonably incurred by [Richard] in connection with any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, **by reason of the fact** that he or she is or was a director or officer of [MMPI] **or** is or was serving at the request of [MMPI] as a director, trustee, partner, member, officer, employee or agent of another corporation, partnership, limited liability company, joint venture, trust or other enterprise **and** whether or not such action is by or in the right of [MMPI] or that other corporation, partnership, limited liability company, joint venture, trust or other enterprise with respect to which [Richard] serves or has served . . . .

Indemnification Agreement § 2(a) (emphasis added).

Delaware law governs interpretation of the Indemnification Agreement. Under Delaware law, contracts must be "interpreted as written, and effect must be given to their clear and unambiguous terms." Shiftan v. Morgan Joseph Holdings, Inc., 57 A.3d 928, 934-35 (Del. Ch. 2012).

12

It is unclear in what capacity Richard litigated or participated in the non-bankruptcy proceedings.[10]  Neither party disputes that most, if not all, of the non-bankruptcy proceedings were based on or in connection with the Guaranties.  We, however, lack certainty in this regard and, thus, questions of interpretation arise in relation to the Indemnification Agreement.

Because of the ambiguities in the Agreements, the bankruptcy court's findings are critical to our review.  See Pierce v. Carson (In re Rader), 488 B.R. 406, 412 (9th Cir. BAP 2013) (when language is ambiguous, we look to the record to interpret or determine what the bankruptcy court decided).  In contested matters, such as a motion to disallow a claim, the bankruptcy court must render its findings of fact and conclusions of law as

_____

[10]  The record includes a snippet of the deposition testimony of Gaelle Gralnek, a Neufeld partner, taken by Charleston Capital Advisory LLC and Hartland Asset Management Corporation on January 13, 2011.  Charleston Capital Advisory LLC eventually confirmed a chapter 11 plan that involved all the Cases, with the exception of one debtor entity.  The Debtors subsequently used Gralnek's deposition to support the opposition to Neufeld's request for fees.  In the deposition, Gralnek discussed the cases where Neufeld represented Richard personally and who the law firm considered as its client in the cases discussed.  Gralnek subsequently submitted a declaration in support of the law firm's opposition to the Debtors' motion to disallow its fees.  Gralnek contested the Debtors' characterization of his testimony and declared that the law firm represented Richard and other insiders on behalf of the company in which their interests were aligned.
There appears to be correlation between the cases discussed at Gralnek's deposition and the actions listed in Richard's Amended Proof of Claim.  Even so, given the complex record and number of parties involved, and the paucity of findings in the record, we cannot be reasonably or confidently sure of which actions and proceedings were litigated and in what context.

13

required by Civil Rule 52(a), incorporated by Rule 7052, and by Rule 9014. Even if the bankruptcy court rules without articulating such findings, there is no reversible error where the record provides the reviewing court with a full, complete, and clear view of the issues on appeal. First Yorkshire Holdings Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.), 470 B.R. 864, 871 (9th Cir. BAP 2012) (internal citation omitted). Findings are adequate when the record contains clear references to the factual basis supporting the bankruptcy court's ultimate conclusions. Id. If, however, the record provides no clear basis for the court's ruling or there is an absence of complete findings, we may vacate the bankruptcy court's order and remand for further proceedings. In re First Yorkshire Holdings, 470 B.R. at 871.

Here, the record shows that the bankruptcy court made no findings in relation to either the Contribution Agreement or the Indemnification Agreement. The bankruptcy court broadly discussed indemnification in regards to the Levene Claim, and seemed to decide that indemnification was possible under one or both of the Agreements. It did not, however, identify which of the Agreements supplied the possible basis for indemnification. The absence of such findings and general inability to glean such information from the record hampers our ability to conduct a proper review of the Agreements. Therefore, we cannot complete a de novo review of whether one or both of the Agreements established a basis for the Claims.

Due to this lack of necessary findings, we hereafter vacate and remand as to two of the specific disallowed claims. On

14

remand, the bankruptcy court will need to make findings as to whether Richard is entitled to indemnity or contribution under the Agreements if it does not disallow the Claims on the alternative grounds discussed below.

### C. The record lacks findings as to the bankruptcy court's disallowance of the Levene Claim.

Richard contends that the bankruptcy court erred when it found that he incurred the Levene attorneys' fees in furtherance of his personal interests and not in his capacity as guarantor. He maintains that he obtained separate counsel to assist him with his own legal and financial obligations under the Guaranties, which he executed for the Debtors' benefit.

The Debtors respond that while Richard was entitled to seek separate counsel, it was inappropriate for him to request that the Debtors indemnify him in connection with these fees. They contend that the Levene time records reflect tasks that exclusively supported Richard's personal interests in the Cases, rather than his legal and financial obligations under the Guaranties. Indeed, the Debtors assert that the word "guaranty" is no where to be found in the Levene time records attached to the Amended Proof of Claim.

At the hearing, the bankruptcy court found that Richard retained Levene to protect his own interests, which were not subject to indemnification. It concluded that the Levene Claim did not constitute an "indemnification situation," because it was not related to guaranty claims against Richard, but rather, was based on Richard's self-interests as a shareholder and principal of the Debtors.

15

As discussed below, we understand the general logic of the bankruptcy court's ruling. The lack of adequate findings, however, makes it impossible for us to affirm, as we cannot obtain a full, complete, and clear view of the issue on appeal as to the Levene Claim.

We note that the bankruptcy court was free to draw on its personal experience in presiding over the Cases. We can assume that the bankruptcy court did so. We acknowledge that in presiding over the Cases, the bankruptcy court became knowledgeable as to the key parties and relevant proceedings involved. Thus, the bankruptcy court could use its own experience in large measure to determine whether the Levene Claim entailed fees and expenses beyond the scope of the Agreements.

A review of the Levene time records also largely supports the bankruptcy court's determination. Some entries clearly relate solely to Richard's personal interests. Others relate to general bankruptcy activities in the Cases. What Richard fails to grasp is the distinction between legal representation that he desired because he was an officer or director and legal representation that was required by his prior officer, director, and guarantor status. In short, Richard was absolutely entitled to obtain personal advice regarding the Debtors' bankruptcies, but, for the most part, the relationship between his officer and director status and his desire for these fees may be too tenuous for proper inclusion as an indemnified obligation.

But a review of the time records also raises questions that cannot be explained in the absence of findings. One time code titled "Other Litigation," references litigation that may or may

16

not bear any connection or relevancy to the Guaranties. Claim No. 78-2 at 218-220. There is also at least one time entry, contrary to the Debtors' assertion, that relates to a meeting with Richard to discuss "Actions on Guaranties." Id. at 230. And if there ultimately is an award of any type on the Claims, the fees incurred in preparing the Claims may be recoverable.

At oral argument, the Debtors asserted that Richard "waived" remand because he attached numerous time records without articulating which time records were pertinent to his request for indemnity. They asserted that the bankruptcy court was not required to sift through the time records to make its determination and, thus, that Richard failed to meet his burden in seeking indemnity as to the fees.

Even if this is true, the bankruptcy court did not rule on this basis so far as we can tell. And if the bankruptcy court reviewed the records and found an entry facially relating to a guaranty to be unrelated to a guaranty, then we require a finding to determine the appropriateness of such a determination.

On this record, we cannot conduct an appropriate review as to the entirety of the Levene Claim. And while those fees subject to indemnity, if any, may not be significant in amount, the lack of sufficiently detailed findings makes it impossible for us to determine whether the bankruptcy court erred in making a blanket finding that all of the Levene fees were based on Richard's personal interests in the Cases. Therefore, we vacate the Disallowance Order relating to the Levene Claim and remand with instructions that the bankruptcy court make the required findings supporting its determination pursuant to Civil

17

Rule 52(a).

### D. The record lacks findings as to the bankruptcy court's disallowance of the Neufeld Claim.

Richard also contends that the bankruptcy court erred by improperly imputing Neufeld's disqualification to his claim. He argues that his request for indemnity implicates completely different attorneys' fees than the law firm's claim for fees that was disallowed by the bankruptcy court. He also contests the argument that as a matter of state law, Neufeld was not entitled to payment from him, and, thus, that he was not entitled to indemnity because his payments to Neufeld were gifts. Richard finally contends that the bankruptcy court could not properly base disallowance on section 328(c).

The Debtors maintain that the bankruptcy court properly barred recovery of the fees under California law and that Neufeld was barred from recovering fees from the Debtors, either directly through Neufeld's own claims or indirectly through indemnification of Richard. They assert that under the California Rules of Professional Conduct, incorporated into bankruptcy proceedings by the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, the bankruptcy court properly and thoroughly determined that Neufeld was not entitled to fees from the Debtors or Richard. Finally, the Debtors argue that section 328(c) does not supplant the California Rules of Professional Conduct or California law regarding ethical violations by an attorney, and,

18

thus, that Richard's argument in this regard is inappropriate.[11]

Assuming that Richard had a right to indemnification in connection with the disputes where Neufeld provided representation, under one or both of the Agreements, the Debtors could still defend against payment if the fees were unreasonable. And the fees could be unreasonable, in whole or in part, if Richard paid them when he had a complete defense to payment due to a conflict. Here, however, the record lacks findings in critical areas and, thus, we cannot conduct an appropriate appellate review.

We know that the bankruptcy court found that Neufeld failed in its disclosure obligations and that this justified disallowance of its request for fees for services rendered directly to the Debtors. But the record does not show that conflicts existed in relation to all areas where Neufeld represented Richard. And if conflicts existed, we do not know whether they would have justified Richard's refusal to pay Neufeld, thus negating any obligation by Debtors to indemnify him.

At the Motion to Disallow hearing, the Debtors asserted that they did not "think [they] should be obligated to pay for an attorney that had a conflict that was not disclosed." Hr'g Tr.

___

[11] The Debtors also argue that the Disallowance Order was proper pursuant to the bankruptcy court's broad grant of power under section 105. That argument was not raised before the bankruptcy court, and thus, we do not address it in this appeal. See Samson v. W. Capital Partners, LLC (In re Blixseth), 684 F.3d 865, 872 n. 12 (9th Cir. 2012) (appellate court may decline to address argument not raised before bankruptcy court) (citation omitted).

19

(May 11, 2012) at 12:19-20. When Richard then asserted that the settlements Neufeld represented him on were beneficial, the bankruptcy court responded, "that doesn't get around [that Neufeld] had a conflict." Id. at 13:5-6. In noting that Neufeld had simultaneously represented Richard, the Debtors, and Belinda Meruelo, the bankruptcy court further stated that it was "inappropriate and wrong. That's all. So, yeah, no money for [Neufeld]." Id. at 13-14. After examining the remaining claims, the bankruptcy court concluded: "Well, I think that's all of it, so I think I'm granting the motion." Id. at 15:20-21. Thus, the bankruptcy court's findings as to the conflicts disqualification are non-existent.

The record on appeal does little more to assist us in this regard. At oral argument, the Debtors argued that the record on appeal clearly supported the bankruptcy court's finding of conflicts as to Neufeld's representation of Richard. Indeed, they argued that Richard was "not innocent" and engaged in litigation tactics with the law firm, which supplied an additional basis for the determination of conflicts. Based on these assertions, we gave the parties an additional week after arguments to file supplements; the parties were instructed to specifically identify where in the record on appeal the bankruptcy court made such findings.

The Debtors filed an eight page supplement on February 28, 2013. They provide citations to documents related to Neufeld's request for fees and the Debtors' motion to disallow those fees, as well as citations to documents related to a payment inappropriately made to Neufeld by the pre-reorganization Debtors

20

and subject to the bankruptcy court's disgorgement order.

The Debtors also provided citations to documents relating to an approved bankruptcy settlement agreement entered into among the Debtors, Richard, and creditors Wells Fargo Bank and Berkadia Commercial Mortgage, Inc. ("Wells Fargo/Berkadia"). The Debtors noted that Richard moved for and obtained the bankruptcy court's approval for an indemnity agreement in connection with that particular settlement, but that the bankruptcy court did not approve the portion of the Wells Fargo/Berkadia indemnity agreement relating to payments to Neufeld.

It is true that the bankruptcy court's order approved the indemnity agreement in the Wells Fargo/Berkadia settlement on the condition that the Debtors delete a provision that would have required immediate payment of attorneys' fees. The order further provided, however, that nothing in the order itself or in the indemnity agreement, as revised, would prejudice Richard's rights to seek indemnity for fees incurred in the Wells Fargo/Berkadia litigation. Moreover, at the Motion to Disallow hearing, the Debtors clarified that the prior bankruptcy judge had "carved out" the indemnity issue in regards to that settlement. Thus, Debtors' reliance on the Wells Fargo/Berkadia settlement is not helpful.

The other citations in the Debtors' supplement similarly fail to assist the Panel. There is much ado about Neufeld and there are many oblique references to improper conduct. None of the Debtors' specific citations in their supplement, however, directly support the allegations they advanced at oral argument: that the bankruptcy court specifically found or determined that

21

Richard was a bad actor or engaged in nefarious conduct as a guarantor or former director/officer of MMPI.

We also emphasize that even if we assume that the bankruptcy court properly found disqualifying conflicts under the California Rules of Professional Conduct, another concern arises: nothing in the record shows that the bankruptcy court considered the appropriate remedy for the law firm's violation or whether the violation provided Richard with a defense to payment of fees.

California case law establishes that violation of an attorney's ethical obligations may lead to forfeiture of fees for services rendered. See Pringle v. La Chapelle, 73 Cal. App. 4th 1000, 1006 (1999); Cal Pak Delivery, Inc. v. United Parcel Service, Inc., 52 Cal. App. 4th 1, 14-16 (1997); Jeffry v. Pounds, 67 Cal. App. 3d 6, 11 (1977); see also Rodriguez v. Disner, 688 F.3d 645, 655 (9th Cir. 2012) (courts have "broad discretion to deny fees to an attorney who commits an ethical violation."). But such violations are not a *per se* bar to all recovery of fees. See Pringle, 73 Cal. App. 4th at 1006; Cal Pak, 52 Cal. App. 4th at 16; Jeffry, 67 Cal. App. 3d at 11.

Here, there are insufficient factual findings to support the bankruptcy court's disallowance of the Neufeld Claim. We cannot determine what the conflict was as to Richard. As such, we cannot determine whether the violation was so serious that it provided Richard with a defense to a Neufeld payment claim that negated the Debtors' indemnification obligations.

We extended our review beyond the record on appeal, but were unable to construct an adequate record capable of review. While we may draw inferences from the record, the paucity of necessary

22

findings here requires us to make an inferential leap of inappropriate length. Therefore, we vacate the Disallowance Order relating to the Neufeld Claim and remand with instructions that the bankruptcy court make the required findings supporting its determination pursuant to Civil Rule 52(a).

**E.    Richard waived all his arguments as to the Nemiroff Claim.**

Richard appeals the entirety of the Disallowance Order, but did not address the Nemiroff Claim in his opening brief. In his Statement of Issues on Appeal, Richard identified the sole issue as whether the bankruptcy court erred in granting the Motion to Disallow. At oral argument, however, Richard requested that we remand to the bankruptcy court so that he could, among other things, address issues including the Nemiroff Claim. He did not advance any substantive argument as to the Nemiroff Claim at any point on appeal.

Given that Richard did not address the Nemiroff Claim in his opening brief, his reply brief, or at oral argument, we deem his arguments as to that particular claim waived. See Res. Funding, Inc. v. Pac. Cont'l Bank (In re Wash. Coast I, LLC), 485 B.R. 393, 402 n.8 (9th Cir. BAP 2012) (issues not specifically and expressly argued in opening brief are waived); see also Diener v. McBeth (In re Diener), 483 B.R. 196, 202 n.7 (9th Cir. BAP 2012) (same). While the bankruptcy court may or may not have rendered sufficient findings on the Nemiroff Claim, we cannot and do not suppose Richard's arguments on appeal with respect to that particular claim. He bears the burden of articulating a basis for reversal as the appellant and simply appealing the

23

Disallowance Order in its entirety is insufficient to support his challenge to the Nemiroff Claim.  Therefore, we do not consider the Nemiroff Claim on appeal.

## CONCLUSION

For the reasons stated above, we VACATE the Disallowance Order with respect to the Levene and Neufeld Claims and REMAND to the bankruptcy court so that it may make the required findings regarding those claims.[12]  We AFFIRM the Disallowance Order as to the Nemiroff Claim.

[12] Based on the foregoing, we decline to address Richard's remaining arguments relating to waiver and notice under the Agreements.  There is no evidence in the record that they provided any basis for the bankruptcy court's determinations, and we cannot reach any independent conclusions regarding these issues on this record.