FILED

MAY 10 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. CC-11-1144-KiMkH |
| FIRST YORKSHIRE HOLDINGS, INC., | Bk. No. SV 10-26058-AA |
| Debtor. | |
| FIRST YORKSHIRE HOLDINGS, INC., | |
| Appellant, | |
| v. | **O P I N I O N** |
| PACIFICA L 22, LLC., | |
| Appellee. | |

Argued and Submitted on October 21, 2011
at Pasadena, California

Filed - May 10, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Hon. Alan M. Ahart, Bankruptcy Judge, Presiding

_____

Appearances:    Moses S. Bardavid of the Law Offices of Moses S.
Bardavid, for Appellant First Yorkshire Holdings,
Inc.; Martin W. Phillips of the Law Offices of
Martin W. Phillips, argued for Appellee Pacifica L
22, LLC.

Before: KIRSCHER, MARKELL, and HOLLOWELL, Bankruptcy Judges.

KIRSCHER, Bankruptcy Judge:

Appellant, debtor First Yorkshire Holdings, Inc. ("First Yorkshire"), appeals an order from the bankruptcy court granting appellee, Pacifica L 22, LLC ("Pacifica"), relief from the automatic stay under 11 U.S.C. § 362(d)(2) and (d)(4).[1] As we find the bankruptcy court abused its discretion by failing to make any findings on the equity and value of First Yorkshire's property interest in its junior deed of trust under § 362(d)(2), We VACATE and REMAND with instructions to enter findings. We also find the bankruptcy court abused its discretion in granting relief under § 362(d)(4), when relief under § 362(d)(4) potentially could affect other non-debtor parties, and because the bankruptcy court failed to make <u>any</u> findings on that matter. We VACATE that portion of the order granting relief under § 364(d)(4)and REMAND with instructions to enter findings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A.    Prepetition events.**

First Yorkshire is a Delaware corporation formed for the sole purpose of acquiring and thereafter selling interests in real property. Since its inception, First Yorkshire obtained an interest in three separate parcels of real property in Southern California. This encumbered real property is located on Tryon Road in Los Angeles, California (the "Real Property").

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure will be referred to as "FRCP."

On January 22, 2009, non-debtor borrower Alejandro Elias Weissmann ("Weissmann") obtained a purchase money loan in the amount of $1.32 million from East West Bank to purchase the Real Property. In exchange for the loan, Weissmann executed a note and a first deed of trust in favor of East West Bank. On January 26, 2009, Weissmann executed a grant deed gifting the Real Property to Serron Investments, Inc. ("Serron"), which took the Real Property subject to the note and East West Bank's first deed of trust. East West Bank's first deed of trust was recorded in Los Angeles County on January 30, 2009. Weissmann's grant deed to Serron was recorded in Los Angeles County on September 22, 2009.

On April 9, 2010, Serron executed two more deeds of trust on the Real Property: a second deed of trust in favor of First Yorkshire ("FY's Lien Interest")in the amount of $265,000, and a third deed of trust in favor of Durham Development, Inc. in the amount of $245,000. The second and third deeds of trust were recorded in Los Angeles County several months later on November 30, 2010. Meanwhile, on September 15, 2010, East West Bank assigned its interest in the note and first deed of trust to Pacifica. The Assignment of Deed of Trust was recorded in Los Angeles County on September 22, 2010.

On December 22, 2010, Serron executed a grant deed granting back to Weissmann a 25% interest in the Real Property, thereby making them co-owners. First Yorkshire filed a chapter 11 petition for relief on December 23, 2010, just 23 days after recording its FY's Lien Interest.

**B.   Pacifica's motion for relief from stay.[2]**

FY's Lien Interest on the Real Property is listed in Schedule A.  On January 31, 2011, Pacifica moved for relief from stay under § 362(d)(1), (d)(2)(A) and (B), and (d)(4) (the "Stay Relief Motion").  To support its motion, Pacifica offered the note, the deeds of trust, the assignment, a declaration from a real estate broker opining on the Real Property's fair market value, and a declaration from Manoj Chawla ("Chawla"), Pacifica's general manager.

According to Pacifica, a Notice of Default had been recorded on the Real Property on August 23, 2010, a Notice of Sale had been recorded on November 30, 2010, and a foreclosure sale was scheduled for February 28, 2011.  As of January 19, 2011, the total debt owed to Pacifica on the Real Property was $1,386,326.40.   First Yorkshire was owed at least $265,000. Based solely on an exterior inspection conducted on January 14, 2011, Pacifica's real estate broker valued the Real Property at $1.5 million.   Assuming estimated costs of sale at $120,000, Pacifica asserted that the debt on the Real Property exceeded its interest, thus leaving no "equity" in the Real Property for FY's Lien Interest.

Pacifica further contended that the transfer or issuance of the grant deed from Weissmann to Serron (and then partially back

---

[2]  Pacifica moved for relief from stay in First Yorkshire's bankruptcy because FY's Lien Interest in the Real Property (and the rights contained therein) is considered property of the estate, which would invoke the stay under § 362(a).  See First Fed. Bank of Cal. v. Cogar (In re Cogar), 210 B.R. 803, 809 (9th Cir. BAP 1997)(property is defined broadly under § 541 and includes liens held by the debtor on property of a third party).

to Weissmann), and the issuance of junior trust deeds by Serron to First Yorkshire and Durham Development, Inc., manifested acts of fraud and bad faith supporting the extraordinary relief allowed under § 362(d)(4). Pacifica asserted in an affidavit attached in support of its Stay Relief Motion that "it appear[ed] [First Yorkshire] and other parties claiming fractional interests in the [P]roperty [were] preparing a series of [bankruptcy] filings based on these recent transfers of interest."

First Yorkshire's opposition to the Stay Relief Motion included a declaration from its principal, Oscar Broederlow ("Broederlow"), and a certified appraisal valuing the Real Property at $2 million. First Yorkshire argued that Pacifica's claim under § 362(d)(1) failed because Pacifica made no clear argument as to why it was not adequately protected, and lack of payments did not automatically entitle it to relief from stay. In any event, First Yorkshire offered to pay Pacifica 5% interest-only payments on Pacifica's loan as a good faith adequate protection payment.[3]

First Yorkshire contended that Pacifica's claim under § 362(d)(2)(A) and (B) also failed because, based on the Real Property's value of $2 million, First Yorkshire had equity in the Real Property and, according to Broederlow, the Real Property was "an essential piece of an effective reorganization that [was] in prospect."

Finally, First Yorkshire rejected Pacifica's allegations of

---

[3] Because the bankruptcy court did not grant Pacifica relief under § 362(d)(1), we need not address that issue any further.

fraud and bad faith under § 362(d)(4). First Yorkshire asserted that it did not promptly record its second deed of trust only because the Real Property owners were in continuous negotiations with East West Bank for a loan modification, and a recorded second deed of trust could have been detrimental to that process. First Yorkshire further asserted that the Real Property owners were negotiating with potential buyers and hoped to secure an offer that would pay off in full the debt to Pacifica and First Yorkshire.

In its tentative ruling dated March 1, 2011, the bankruptcy court expressed its inclination to grant the Stay Relief Motion under § 362(d)(2) because "this debtor has no equity in the [Real] [P]roperty and this debtor has not demonstrated that the [Real] [P]roperty is necessary for this debtor's reorganization." (Emphasis in original). The court was also inclined to grant relief under § 362(d)(4), but the tentative ruling did not articulate the basis for that inclination.

The bankruptcy court held a hearing on the Stay Relief Motion on March 2, 2011. Both parties were given the opportunity to argue their positions. First Yorkshire asserted that its note and second deed of trust were property of the estate, and that it had equity in the Real Property based on its valuation of $2 million. Pacifica contended that no equity could exist for First Yorkshire because it did not have an ownership interest in the Real Property. Pacifica also asserted what it believed were facts supporting its claim under § 362(d)(4). First Yorkshire rejected Pacifica's § 362(d)(4) claim, contending that none of the underlying actions by the Real Property owners or First

- 6 -

Yorkshire were unlawful, nor did they support such a claim. First Yorkshire further noted that its Schedule A disclosed a security interest in a second property, as well as a fee interest in a third.

After hearing argument from the parties, the bankruptcy court granted the Stay Relief Motion under § 362(d)(2) for the reasons stated in its tentative ruling, but it declined to grant relief under § 362(d)(4). In seeking clarification of the ruling, counsel for First Yorkshire inquired:

COUNSEL: All right. And so no 362(d)(4)?

COURT: But no 362(d)(4) relief. Otherwise, my tentative stands.

Hr'g Tr. 9:13-15, Mar. 2, 2011. The court instructed Pacifica's counsel to prepare the order. Hr'g Tr. 9:19-20.

Shortly thereafter, Pacifica lodged its proposed order granting the Stay Relief Motion under § 362(d)(2). First Yorkshire thereafter objected to Pacifica's lodged order and submitted its own proposed order. Two weeks later, on March 28, 2011, the bankruptcy court entered its own order granting the Stay Relief Motion under both § 362(d)(2) and (d)(4) (the "Stay Relief Order"). The top portion of the order read: "CHANGES MADE BY COURT." First Yorkshire timely appealed the Stay Relief Order on April 1, 2011.[4]

---

[4] On October 3, 2011, First Yorkshire filed an emergency motion for stay pending appeal due to an October 4 foreclosure sale of the Real Property. The Panel entered an order on October 4, 2011, granting the stay to maintain the status quo on appeal, which will remain in effect until entry of our written disposition. The stay will be vacated by separate order effective upon the date the mandate is issued to the bankruptcy
(continued...)

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court abuse its discretion in granting the Stay Relief Motion under § 362(d)(2)?

2. Did the bankruptcy court abuse its discretion in granting the Stay Relief Motion under § 362(d)(4)?

## IV. STANDARD OF REVIEW

We review a bankruptcy court's order granting relief from the automatic stay for an abuse of discretion. Arneson v. Farmers Ins. Exch. (In re Arneson), 282 B.R. 883, 887 (9th Cir. BAP 2002). To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc).

## V. DISCUSSION

**A. The bankruptcy court abused its discretion when it granted the Stay Relief Motion under § 362(d)(2).**

Equity, for purposes of § 362(d)(2)(A), is the difference

---

[4](...continued)
court; however, given that the Panel is vacating and remanding for further findings and for conducting other matters in accordance with our opinion, the automatic stay under § 362 will remain in effect.

- 8 -

between the value of the property and all encumbrances on it. Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc.),171 B.R. 71, 75 (9th Cir. BAP 1994)(citing Stewart v. Gurley, 745 F.2d 1194, 1196 (9th Cir. 1984)). "The concept of 'equity' in property is based on the premise that the property itself has some economic value to its owner." Scripps GSB I, LLC, v A Partners, LLC (In re A Partners, LLC), 344 B.R. 114, 121 (Bankr. E.D. Cal. 2006)(emphasis added). Such conclusion is further supported by the definition of equity: "An ownership interest" determined by "the amount by which the value of or an interest in property exceeds secured claims or liens." Black's Law Dictionary 560 (7th ed. 1999).

No doubt exists, however, that FY's Lien Interest on a third party's real property constitutes property of First Yorkshire's bankruptcy estate under § 541. First Fed. Bank of Cal. v. Cogar (In re Cogar), 210 B.R. 803, 809 (9th Cir. BAP 1997)(property is defined broadly under § 541 and includes a lien held by the debtor on property of a third party; however, such lien does not allow debtor to restructure the terms of a priority lien held by a creditor of the third party).

First Yorkshire contends the bankruptcy court erred in granting relief under § 362(d)(2) because, based on a valuation of the Real Property at $2 million and the prospect of a sale, it was clear that First Yorkshire had equity in the Real Property, and that its secured lien had value, thus proving its necessity for an effective reorganization. The bankruptcy court issued no findings as to what value it considered in granting the Stay Relief Motion. We can not decipher from the record what

- 9 -

methodology was used in determining value and consequently equity or the lack of equity in FY's Lien Interest. Did the bankruptcy court use Pacifica's proffered value of $1,500,000 or First Yorkshire's value of $2,000,000, or some other value? What costs or expenses of sale may have decreased the value remaining to secure the several liens on the property? Other alternative valuations may also be available to determine the value of FY's Lien Interest, such as soliciting opinions from mortgage brokers as to the value of FY's Lien Interest depending on whether it is secured or unsecured. Other factors may also impact value such as statutory rights of the lien holder, i.e., the right to collect rents on default; the right to foreclose on default; the right to receive notice of the default in a senior lien; the right to purchase the property at a foreclosure sale; the right to redeem; the right to take title to the property in lieu of foreclosure with the consent of the owners; and the right to cure defaults owed to senior creditors. See Cal. Civ. Code §§ 2924, 2927.

Section 362(d)(2) requires the bankruptcy court, on request of a party in interest, to grant relief from the automatic stay when debtor has no equity in the property, and the property is not necessary to debtor's effective reorganization. Pursuant to § 362(g), the moving party has the burden of proof on the issue of debtor's equity; the debtor has the burden of proof on all other issues. Pacifica had the burden to establish that First Yorkshire did not have equity in FY's Lien Interest, and as noted, we are unable to determine what value the bankruptcy court used in determining the lack of equity.

First Yorkshire contends on appeal that it provided evidence of its financial ability to exert its rights as a junior lien holder to either redeem or reinstate the loan. This issue was never specifically raised before the bankruptcy court. We generally will not consider issues raised for the first time on appeal. United States v. Pimentel-Flores, 339 F.3d 959, 967 (9th Cir. 2003) and will not do so here. Such assertions by First Yorkshire were unnecessary as Pacifica failed to carry its burden in clearly establishing that First Yorkshire did not have equity in FY's Lien Interest. The requirements of § 362(d)(2) are conjunctive and with Pacifica failing to carry its burden, First Yorkshire was not required to go forward on whether FY's Lien Interest was necessary to an effective reorganization. See In re A Partners, LLC, 344 B.R. at 126 (If debtor has no equity in property then debtor must establish that property is necessary to an effective reorganization.).

The Stay Relief Motion is a contested motion under Rule 9014 and is subject to FRCP 52(a), which requires the bankruptcy court to find the facts specifically and state its conclusions of law separately. In the absence of complete findings, we may vacate a judgment and remand the case to the bankruptcy court to make the required findings. See United States. v. Ameline, 409 F.3d 1073 (9th Cir. 2005).

Accordingly, the bankruptcy court abused its discretion by failing to make findings establishing value and determining that First Yorkshire did not have equity in FY's Lien Interest. We VACATE and REMAND for further proceedings in accordance with this decision.

**B.   The bankruptcy court abused its discretion when in granted the Stay Relief Motion under § 362(d)(4).**

The special relief afforded creditors in § 362(d)(4)[5] was added in 2005 under BAPCPA.  It permits the bankruptcy court to grant in rem relief from the automatic stay in order to address schemes using bankruptcy to thwart legitimate foreclosure efforts through one or more transfers of interest in real property.  If the court's order granting relief under § 362(d)(4) is recorded in compliance with applicable state law, it is binding in any other bankruptcy case filed in the next two years purporting to affect the same real property.  See § 362(d)(4), § 362(b)(20).

To obtain relief under § 362(d)(4), the court must find three elements to be present.  First, debtor's bankruptcy filing must have been part of a scheme.  Second, the object of the

---

[5]   Until December 22, 2010, § 362(d)(4) read as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay--

>      (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved either--
>          (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
>          (B) multiple bankruptcy filings affecting such real property (emphasis added).

The revised statute, as amended by the Bankruptcy Technical Corrections Act of 2010, Pub. L. No. 111-327, 124 Stat. 3557 (2010) (effective December 22, 2010) eliminated the conjunctive "and" in paragraph (4) and replaced it with the disjunctive "or." Therefore, the party seeking relief from stay under § 362(d)(4) must show only a scheme by debtor to delay, hinder, or defraud, just as in § 727(a)(2).

In the stay Relief Order entered on March 28, 2011, the bankruptcy court erroneously applied the older version of paragraph (4).  Upon remand, it should apply the amended statute.

scheme must be to delay, hinder, or defraud creditors. Third, the scheme must involve either (a) the transfer of some interest in the real property without the secured creditor's consent or court approval, or (b) multiple bankruptcy filings affecting the property.[6] For the court to grant relief under § 362(d)(4), and thus trigger two years of prospective relief as to the subject real property, it must affirmatively find that the three elements above are present. In re Abdul Muhaimin, 343 B.R. at 169 ("The precise language is: 'if the court finds . . . .' For the court to make such an affirmative finding, it must have proof of the elements required to justify such relief.").

As recognized by the bankruptcy court in In re Abdul Muhaimin, relief under § 362(d)(4) has serious implications. By seeking relief under § 362(d)(4), the creditor requests specific prospective protection against not only the debtor, but also every non-debtor, co-owner, and subsequent owner of the property. Id. If granted, such relief nullifies the ability of the debtor and any other third party with an interest in the property to obtain the benefits of the automatic stay in future bankruptcy cases for a period of two years. Id.

First Yorkshire contends that the bankruptcy court violated its due process rights when it entered relief under § 362(d)(4) despite stating at the hearing that such relief was not justified

---

[6] As noted by one bankruptcy court, § 362(g) would appear to put the burden of proof of these elements on the debtor as the opposing party. In re Abdul Muhaimin, 343 B.R. 159, 169 (Bankr. D. Md. 2006). However, the court concluded that such a result is nonsensical. We agree. In any event, Pacifica has never contended that it did not have the burden of proof on this issue.

on the record. While we disagree that First Yorkshire was denied due process since it had ample opportunity to defend the Stay Relief Motion, we do note that the Stay Relief Order contains no findings whatsoever establishing why Pacifica was entitled to such relief. Because the Stay Relief Motion is a contested matter under Rule 9014 it is subject to FRCP 52(a), which requires the bankruptcy court to find the facts specifically and state its conclusions of law separately.

In the absence of complete findings, we may vacate a judgment and remand the case to the bankruptcy court to make the required findings. See United States. v. Ameline, 409 F.3d 1073 (9th Cir. 2005). We note that a bankruptcy court's failure to make factual findings as required by FRCP 52(a) does not require reversal and remand unless a full understanding of the issues under review is not possible without aid of the findings. See Simeonoff v. Hiner, 249 F.3d 883, 891 (9th Cir. 2001). Here, it is not clear without further findings from the bankruptcy court that Pacifica carried its burden of proof on all of the elements for relief from stay under § 362(d)(4). Findings are particularly important here because of the in rem nature of the Stay Relief Order and the detrimental effect it has on parties besides First Yorkshire.

Accordingly, we VACATE the portion of the Stay Relief Order granting relief under § 362(d)(4) and REMAND with instructions that the bankruptcy court make the required findings supporting such relief.

## VI. CONCLUSION

For the foregoing reasons, we VACATE the order granting the

- 14 -

Stay Relief Order under § 362(d)(2) and granting relief under § 362(d)(4) and REMAND these matters to the bankruptcy court to enter findings and to conduct other matters in accordance with our opinion.