FILED

NOT FOR PUBLICATION

SEP 11 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.  CC-13-1441-TaPaKi |
| | ) | |
| JOSEPH M. DEBILIO, | ) | Bk. No.  09-23812-ES |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| JOSEPH M. DEBILIO, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| JEFFREY IAN GOLDEN, Chapter 7 | ) | |
| Trustee;[**] VIBIANA DEBILIO, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Argued and Submitted on July 25, 2014
at Pasadena, California

Filed – September 11, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Erithe A. Smith, Bankruptcy Judge, Presiding

Appearances:   David Bruce Dimitruk for Appellant Joseph M. DeBilio; Chad Haes for Appellee Vibiana DeBilio.

Before:  TAYLOR, PAPPAS, and KIRSCHER, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[**] The Chapter 7 Trustee did not file a brief or otherwise participate in this appeal.

The chapter 7[1] trustee entered into a settlement with Debtor Joseph M. DeBilio's ex-wife; among other things, the ex-wife purchased all estate assets providing as consideration waivers of a super-priority domestic support claim and an unsecured claim and a cash payment. The ex-wife, however, reserved the right to pursue recovery of the nondischargeable domestic support claim against the Debtor's post-petition assets. Finally, the Debtor received only partial payment on account of a claimed exemption asserted as to one of the assets sold. The bankruptcy court entered an order approving this settlement and sale.

The bankruptcy court, however, failed to make any findings in support of this decision. As a result, we conclude that the bankruptcy court abused its discretion when it approved the settlement agreement and sale. Therefore, we VACATE the order and REMAND to the bankruptcy court for further proceedings consistent with this decision.

## FACTS

Vibiana[2] DeBilio is the Debtor's ex-wife. Their divorce was contentious and lengthy. Property division issues remain undecided, but pre-bankruptcy the state court terminated the marriage and entered an interim child and spousal support order ("Interim Support Order") in favor of Vibiana.

The Debtor eventually sought a modification of the Interim

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] We refer to Vibiana by her first name for sake of clarity; we intend no disrespect.

2

Support Order to reduce payments. While this motion was pending, he filed a chapter 11 petition. Vibiana promptly commenced an adversary proceeding alleging nondischargeable claims under § 523(a). She also filed two proofs of claim: one for $272,800 on account of unpaid amounts under the Interim Support Order and the other for $3,500,000 in connection with the issues raised in the adversary proceeding. The Orange County Department of Child Support Services ("CSS") also filed a proof of claim in the amount of $241,077.89 in relation to the Interim Support Order.

After approximately a year of inactivity, the Debtor and Vibiana twice attempted to obtain bankruptcy court approval of a settlement as to property division and Vibiana's claims. They were unsuccessful; instead, the bankruptcy court converted the case to chapter 7 on the motion of the United States Trustee.

Following conversion, the Debtor filed amended schedules A and B. He now scheduled six real property assets with a total value of $2,068,750 and available equity. In particular, he rescheduled real property located in Anaheim, California ("South Belleza Property") where Vibiana lived with their children, at a reduced value of $750,000. The Debtor also scheduled significant personal property with a total value of $244,102.02. As to each real property and most, but not all, personal property, the schedules now stated that the asset was "subject to the undetermined community property interest of Debtor's ex-spouse."

The Trustee subsequently abandoned the estate's interest in two of the real property assets. In response, the Debtor filed an amended schedule C, claiming a wildcard exemption of $16,397 in a parcel of real property with substantial equity.

3

Eventually, in October 2012, the state court entered a final support order ("Final Support Order"). The Debtor appealed, and the appeal remains pending before the California court of appeal.

The Trustee next moved for an order approving: (1) a settlement agreement with Vibiana pursuant to Rule 9019; (2) a sale of all estate assets to Vibiana pursuant to § 363(b)(1); (3) overbid sale procedures; and (4) a $6,594 payment to the Debtor based on his claimed wildcard exemption.

The proposed settlement provided for sale free and clear of the Debtor's claimed exemptions and all community claims and interests. In exchange, it required Vibiana to pay $45,000 in cash, to waive her two claims against the estate, including the now $256,776 "super priority" claim,[3] and to cause CSS to withdraw its claim. Vibiana retained her claims against the Debtor, including any nondischargeable claims based on the state court orders. The proposed sale to Vibiana was subject to a minimum overbid of $305,776.

The Debtor opposed. He contested the appropriateness of the sale price, asked for delay so as to allow conclusion of the state court appeal, and argued that, otherwise, Vibiana could obtain a windfall. In response (and, as echoed by Vibiana), the Trustee asserted that the proposed settlement and sale provided the estate fair value and emphasized that, in agreeing to this settlement and sale, he exercised reasonable business judgment. At the hearing, the Trustee noted the significant delay in case

---

[3] Pursuant to § 507(a)(1), a domestic support claim is a "super priority" claim.

resolution, and the fact that the settlement and sale resolved hotly disputed asset ownership issues and allowed a prompt liquidation not otherwise possible absent successful conclusion of an adversary proceeding against Vibiana.

After determining that no party wished to make an overbid, the bankruptcy court stated that it would follow its tentative ruling and orally granted the Trustee's motion. It thereafter entered an order ("Order") confirming its ruling.

The Debtor timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (N). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES[4]**

1. Does the Debtor have standing to appeal from the Order?
2. Did the bankruptcy court have jurisdiction to enter the Order?
3. Did the bankruptcy court err when it approved the Rule 9019 settlement agreement?
4. Did the bankruptcy court err when it approved the § 363(b)(1) sale?

**STANDARD OF REVIEW**

We review approval of both a Rule 9019 settlement agreement and a § 363 sale for an abuse of discretion. Fitzgerald v. Ninn Worx Sr, Inc. (In re Fitzgerald), 428 B.R. 872, 880 (9th Cir. BAP

---

[4] The Debtor delineated some of the issues on appeal in a slightly different manner. We discuss the issues as specifically addressed in his brief.

5

2010) (§ 363 sale); Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.), 292 B.R. 415, 420 (9th Cir. BAP 2003) (Rule 9019 settlement agreement).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION[5]

**A.   The Debtor has standing to appeal from the Order.**

As a preliminary matter, Vibiana contends that the Debtor lacks standing to appeal from the Order as he is not a "person aggrieved" by the settlement agreement and sale; in particular, she relies on the undisputed fact that the case involves a non-surplus estate.

To have standing to appeal from a bankruptcy court order, a debtor must show that he or she is a "person aggrieved." Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 442 (9th Cir. 1983). A debtor is aggrieved if "directly and adversely affected pecuniarily" by the order appealed. Id. As a result, in a typical case, "a hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate" as

[5] Both the Debtor and Vibiana submitted requests for judicial notice. Pursuant to Federal Rule of Evidence 201, we take judicial notice of the entry of the state court's Final Support Order; we deny the remainder of the requests as irrelevant or unnecessary.

6

"[s]uch an order would not diminish the debtor's property, increase his burdens, or detrimentally affect his rights." Id.; see also Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.), 177 F.3d 774, 778 n.2 (9th Cir. 1999).

Here, while the Debtor's estate includes marketable assets, there is no evidence that liquidation will result in a distribution to the Debtor; this is not a surplus estate. Indeed, solvency is not possible even if the Debtor prevails in the state court appeal.

Nonetheless, the Debtor is affected pecuniarily by the Order. First, the Debtor asserted a $16,397 wildcard exemption against one of the real properties sold. The Trustee acknowledged that there was substantial equity in the asset, but under the Order the Debtor received only $6,594. Upon reversal, the Debtor could receive payment of his entire claimed exemption. The impact of the Order on the Debtor's wildcard exemption, thus, is sufficient to confer standing.

The Order also negatively and directly impacts the Debtor; Vibiana receives all of the estate's interests in his prepetition assets — whether separately owned or otherwise — but waives her claims only against the estate. The settlement and sale, thus, leave the Debtor saddled with 100% of an obligation for nondischargeable support obligations. But for the settlement and sale, Vibiana could be paid first from estate assets on account of the nondischargeable support claim — a reduction that favors the Debtor and his fresh start under the Code. The Debtor's pecuniary interest in this aspect of the settlement and sale supports standing to object and to be heard on appeal.

7

**B.    The bankruptcy court had jurisdiction to enter the Order.**

The Debtor argues that the bankruptcy court erred in approving the settlement and sale while his state court appeal was pending.  He correctly asserts that the amount of support is not finally determined while there is a pending appeal and that the California court of appeal has exclusive jurisdiction over this issue.  But he then asserts that the bankruptcy court's approval of the settlement and sale "crossed a jurisdictional line."  We disagree.

The bankruptcy court has exclusive jurisdiction over property of the estate, including community property.  28 U.S.C. § 1334(e)(1); 11 U.S.C. § 541(a)(2).  This is so even when there is a concurrent dissolution proceeding in state court.  See Teel v. Teel (In re Teel), 34 B.R. 762, 763-64 (9th Cir. BAP 1983).  The Debtor conceded this point at oral argument.

The Debtor, instead, improperly conflates the California court of appeal's jurisdiction to review the Final Support Order with the bankruptcy court's exclusive jurisdiction over estate assets and to approve the sale of estate property and a settlement of a creditor's claim.

Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1 (2004), does not compel a different result.  There, the Supreme Court held that the appellant lacked prudential standing to prosecute an action in federal court when "hard questions of domestic relations [were] sure to affect the outcome of the case."  Id. at 17-18.  First, Elk Grove was recently abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377 (2014).  In doing so, the Supreme Court called into question the doctrine

of prudential standing as articulated by Elk Grove and held that such limits were improper as to a claim that otherwise presented a case or controversy as required for federal court adjudication. Id. at 1386-88. Second, the settlement and sale here relate only tangentially to the Debtor's divorce and support issues. While we lack findings sufficient to state with certainty how the bankruptcy court reached its decision, the bankruptcy court did not need to make a final determination on the merits of the Final Support Order appeal to approve the settlement.

The Debtor also argues that Vibiana is judicially estopped from supporting the Trustee's settlement motion as she previously sought and obtained stay relief to continue with the state court dissolution proceeding. We also reject this argument. First, the Debtor raises this argument for the first time on appeal. And second, the record, while incomplete, does not support this assertion; a final decision regarding the correct level of support was not necessary for approval of the settlement or sale motion.

Finally, the Debtor contends that the bankruptcy court's decision was premature given his state court appeal. We again disagree. Bankruptcy courts frequently must evaluate settlements and approve sales prior to final resolution of a relevant issue by another court. Here, the Debtor voluntarily filed for bankruptcy relief and placed his assets under the jurisdiction of the bankruptcy court. He, thus, cannot transform a distaste for the bankruptcy court's ruling into a jurisdictional problem.

///

///

**C.    On this record, the bankruptcy court did not make sufficient findings of fact to support approval of the Rule 9019 settlement agreement and the § 363(b)(1) sale.**

Here, the Trustee's Rule 9019 motion was a contested matter under Rule 9014 and, thus, subject to Civil Rule 52 (incorporated into bankruptcy proceedings by Rule 7052). See Fed. R. Bankr. P. 9014(a), (c).  In pertinent part, Civil Rule 52 provides that the bankruptcy "court must find the facts specially and state its conclusions of law separately.  The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court."  Fed. R. Civ. P. 52(a)(1).  In the absence of complete findings, however, we may vacate a judgment and remand the case. First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.), 470 B.R. 864, 870 (9th Cir. BAP 2012).

The lack of findings by the bankruptcy court is not always fatal to its decision.  See Commercial Paper Holders v. Hine (Matter of Beverly Hills Bancorp), 752 F.2d 1334, 1338 (9th Cir. 1984) ("Although remand generally is required for findings of fact, remand is not necessary when the trial court fails to make such findings and the facts in the record are undisputed."). Here, however, critical facts and legal conclusions are in question.

**1.    The Rule 9019 settlement agreement.**

The Debtor argues that the bankruptcy court erred when it failed to apply the four factors required by Martin v. Kane (In re A & C Props.), 784 F.2d 1377, 1381 (9th Cir. 1986) ("A & C factors"), in approving the settlement agreement.  On this

10

record, we agree.

The bankruptcy court generally has great latitude regarding approval of a compromise or settlement under Rule 9019. In re Mickey Thompson, 292 B.R. at 420. Even so, the compromise must be fair and equitable, in the best interests of the estate, and reasonable. Id. In determining whether a proposed compromise is fair, reasonable, and adequate, the bankruptcy court must consider: (1) the probability of success in the litigation; (2) the difficulties, if any, of collection; (3) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. In re A & C Props., 784 F.2d at 1381. The Trustee and Vibiana bear the burden on these issues. In re Mickey Thompson, 292 B.R. at 420.

Our review of the record establishes that the bankruptcy court approved the settlement and sale motion at the hearing without reference to the A & C factors or any findings to support its decision. It simply stated that it would "stick with [its] tentative ruling and grant the motion." Hr'g Tr. (Aug. 6, 2013) at 9:21-22. The tentative ruling, however, was neither docketed on the bankruptcy case docket nor supplied by the Debtor or Vibiana for review. Further, Vibiana does not dispute the Debtor's assertion as to a lack of findings; at oral argument, she conceded that the tentative simply granted the requested relief.

Vibiana instead relies on the Order, which provides that in approving the settlement, the bankruptcy court considered the

11

motion, opposition, and replies, and that "good cause" was shown. This statement, however, is not an acceptable substitute for appropriate findings as to the A & C factors.

This is particularly true as the transaction raises questions. The Trustee provided extensive analysis, but the analysis suggests that Vibiana received assets with a value that approximated her priority claim. There is no evidence in the record that she discounted her priority claim either on account of a litigation risk, possible litigation costs, or the risk of subordination of her claim under § 507(a)(1)(C). The Trustee, however, emphasized many of these factors from the perspective of the estate in justifying the settlement. It, thus, appears that the estate paid Vibiana's priority claim in full through a sale of assets and that her payment was only on account of asset value in excess of her claims. If true, because Vibiana reserved the right to pursue recovery of the support claim against the Debtor, she could potentially recover this obligation twice.

Further, while this settlement appears very favorable to Vibiana and disfavorable to the Debtor, on this record, we also cannot tell how non-administrative creditors fare. The Trustee made clear that the $45,000 would pay claims – including administrative claims. And the Debtor received some proceeds on account of his claimed exemption. It is possible that creditors may be paid through this settlement or may be well served by this settlement even if they do not receive any payment, but findings in this regard are also necessary.

To be clear, we take no position on the merits of the settlement approval; we merely note these concerns as they

12

underscore the need for findings as required by In re A&C Props.

Given the state of the record, we must conclude that the bankruptcy court erred by failing to make findings evidencing consideration of the A & C factors. Thus, it abused its discretion in approving the settlement agreement.

**2. The § 363(b)(1) sale.**

The Debtor further contends that the bankruptcy court erred by failing to make factual findings as to whether the sale was made in good faith or for fair value. He alleges, in particular, a lack of evidentiary support for the value attributed to the South Belleza Property.[6] On this record, we partially agree.

A trustee may sell property of the estate not in the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b)(1). The trustee (and, ultimately, the bankruptcy court) must assure that the estate receives optimal value as to the asset to be sold. See Simantob v. Claims Prosecutor, LLC (In re Lahijani), 325 B.R. 282, 288-89 (9th Cir. BAP 2005); see also In re Fitzgerald, 428 B.R. at 884. Ordinarily, the trustee is afforded deference in this regard, particularly where he or she exercised business judgment or there is a lack of creditor opposition. In re Lahijani, 325 B.R. at

---

[6] The Debtor also argues that the Order lacked evidentiary support based on the following: (1) that the Trustee failed to provide an economic or financial analysis of the merits of his state court appeal; (2) the majority of the sale purchase price was comprised of a cancellation of Vibiana's claim, rather than actual cash to the Trustee; (3) such cancellation was worthless to the Debtor; and (4) there was a lack of evidentiary support as to the 8% cost of sale deduction in the real property purchase prices. Given our ultimate disposition here, we do not address these arguments.

13

289-90.  But, in the face of stakeholder opposition, the bankruptcy court must take greater care in approving the sale. See id.

   **a. Lack of findings as to good faith and fair value.**

  In the Ninth Circuit, a § 363(b)(1) sale does not require a good faith finding.  See Thomas v. Namba (In re Thomas), 287 B.R. 782, 785 (9th Cir. BAP 2002) ("While no bankruptcy judge is likely to approve a sale that does not appear to be in 'good faith,' an actual finding of 'good faith' is not an essential element for approval of a sale under § 363(b).")  Instead, good faith comes into play within the context of § 363(m).[7]  Id.

  Here, the Trustee did not request a § 363(m) determination nor did the Order refer to § 363(m).  The bankruptcy court, thus, was not required to make a good faith finding in order to approve the sale under § 363(b)(1).

  As to fair value, the converse is true; the bankruptcy court must ensure that the estate realizes optimal value in the transaction.  In re Lahijani, 325 B.R. at 288.  While ordinarily it is correct that a purchase price is presumed to approximate market value when achieved by auction, this assumption is premised on the existence of competition with an appropriate number of bidders.  Id. at 289.  Constrained competition warrants higher scrutiny of the purchase price.  Id.

  The record here reflects that Vibiana was the sole bidder, and nothing suggests that the sale was advertised beyond notice

---

[7] A § 363(m) "good faith" finding by the bankruptcy court shields the sale from appellate review and other remedies.

14

to the Debtor's creditors. Therefore, it is impossible to conclude that market value was achieved by virtue of a sale by auction.

And here, fair value was a particularly critical inquiry; aside from the abandoned properties, Vibiana purchased all of the estate's assets. Further, as discussed, the record suggests that Vibiana received significant benefits from the sale, including retention of the right to pursue nondischargeable support claims against the Debtor. This could result in a full or partial double recovery for Vibiana, to the Debtor's detriment. Whether this right actually arises or is appropriate is ambiguous, but the facial benefit again underscores the need for explanation. Without findings in this regard, it is impossible to evaluate whether the bankruptcy court properly ensured optimal value for the estate.

### b. Lack of evidence as to the value of the South Belleza Property.

The Debtor also argues that the value allocated to the South Belleza Property for the purposes of the sale was unsupported by evidence establishing market value. In response, Vibiana contends that the allocated value was within the range of the true value. She notes that in reaching the value, the Trustee consulted the Debtor's scheduled value, taxable value based on public records, and the opinions of real estate brokers familiar with the geographical area. Vibiana also asserts that the bankruptcy court determined that the Debtor failed to rebut the value assessed with competent evidence.

Once again, on the record before us, it appears that the

15

bankruptcy court made no findings in this regard. The record, however, shows that both the Trustee and Vibiana submitted declaratory evidence in support of the proposed sale and settlement. The declarations included a breakdown of value based on the Debtor's scheduled value, a "value per Vibiana," and a value provided by someone named Bill Friedman. We acknowledge that Vibiana's value was somewhat dated and that the Trustee, without explanation, ultimately used her value, the lowest value, in calculating the § 363(b)(1) sale price. But Vibiana is in physical possession of the property; liquidating the estate's interest therein would be difficult at best. Finally, we note that the Debtor offered evidence of value in the form of a print out from the zillow website; zillow, however, does not constitute credible evidence of value. See In re Phillips, 491 B.R. 255, 260 n.7 (Bankr. D. Nev. 2013) (zillow website is inherently unreliable and is inadmissible as evidence).

Were the value of the South Belleza Property the only issue, we might affirm notwithstanding the lack of specific valuation findings. Here, however, the issues related to the South Belleza Property value only contribute to the inability to determine that the Trustee received and the bankruptcy court ensured optimal value for the estate.

On the record before us, we conclude that the bankruptcy court abused its discretion in approving the § 363(b)(1) sale.

**CONCLUSION**

Based on the foregoing, we VACATE the Order and REMAND to the bankruptcy court for proceedings consistent with this decision.

16