**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   EC-16-1015-KuMaJu |
| ) | |
| ROBERTO LARA RAMIREZ, ) | Bk. No.   15-26710 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ROBERTO LARA RAMIREZ, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| NATIONSTAR MORTGAGE LLC, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on October 20, 2016
at Sacramento, California

Filed – December 2, 2016

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Ronald H. Sargis, Chief Bankruptcy Judge, Presiding

Appearances:     Appellant Roberto Lara Ramirez, pro se, on brief;
Matthew Bryan Learned of McCarthy & Holthus, LLP
argued for appellee Nationstar Mortgage LLC.

Before: KURTZ, MARTIN[**] and JURY, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[**]Hon. Brenda K. Martin, United States Bankruptcy Judge for the District of Arizona, sitting by designation.

## INTRODUCTION

Chapter 13[1] debtor Roberto Lara Ramirez appeals from an order granting relief from stay to Nationstar Mortgage LLC. The bankruptcy court granted Nationstar retroactive relief from the stay, which effectively validated Nationstar's postpetition foreclosure sale. The sale was held one day after the commencement of Ramirez's latest bankruptcy case. The bankruptcy court also granted Nationstar prospective, in rem relief under § 362(d)(4).

All of the relief granted was based, at least in part, on a clearly erroneous finding of fact. Among other things, the bankruptcy court found that Ramirez engaged in a series of transfers in a deliberate attempt to interfere with Nationstar's foreclosure efforts. But there were no allegations or evidence of any such transfers anywhere in the record.

As a result, we must VACATE the bankruptcy court's order granting Nationstar relief from the automatic stay, and we must REMAND for further proceedings.

## FACTS[2]

Ramirez commenced the underlying chapter 13 bankruptcy case

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Local Rule" references are to the Local Bankruptcy Rules for the Eastern District of California.

[2]Many of the facts set forth herein are drawn from the bankruptcy court's written rulings. Ramirez has not challenged on appeal the accuracy of these facts, many of which are procedural in nature and are supported by the history of Ramirez's bankruptcy filings.

on August 25, 2015.  This was not Ramirez's first bankruptcy case.  In fact, he had filed four others in the past few years, as follows:

(1)   In December 2011, Ramirez filed a chapter 13 case.  That case was dismissed in July 2013 for failure to cure defaults in plan payments and failure to file and seek confirmation of a modified plan to address the plan defaults.

(2)   In April 2014, Ramirez filed, pro se, a chapter 7 case.  That case was dismissed in May 2014 based on Ramirez's failure to file many of the documents required under § 521(a).

(3)   In June 2014, Ramirez filed, pro se, another chapter 7 case.  Ramirez received his discharge, and the case was closed in October 2014.  Additionally, Nationstar sought and received relief from the automatic stay to proceed with a nonjudicial foreclosure against Ramirez's residence.

(4)   In December 2014, Ramirez filed, pro se, another chapter 13 case.  That case was dismissed in June 2015 for failure to cure defaults in plan payments and failure to file and seek confirmation of a modified plan after the bankruptcy court denied confirmation of his initial chapter 13 plan.  The record from this chapter 13 case also reflects Ramirez's failure to attend his § 341 meeting of creditors, his failure to complete all of the required chapter 13 documents – including his initial chapter 13 plan – and his failure to disclose his multiple prior bankruptcy cases.

In light of Ramirez's prior bankruptcy filings and pursuant to § 362(c)(3)(A), the automatic stay in the underlying

bankruptcy case was due to automatically expire with respect to the debtor as of September 24, 2015 – 30 days after the filing of Ramirez's latest bankruptcy petition. Ramirez filed three motions requesting that the court extend the automatic stay. The bankruptcy court denied the first motion to extend based on its finding that Ramirez had not rebutted the presumption of bad faith arising pursuant to § 362(c)(3)(C). Based on Ramirez's own admissions, the bankruptcy court in essence found that Ramirez had filed his latest bankruptcy case not for any legitimate bankruptcy purpose but rather to delay Nationstar's scheduled foreclosure sale in the hopes that he could persuade Nationstar to agree to a new loan modification.[3]

The bankruptcy court denied the second two motions to extend because they were untimely and because Ramirez still had not rebutted the bad faith presumption.

In December 2015, Nationstar filed its motion for relief from stay. In the motion, Nationstar requested both retroactive and prospective relief. More specifically, Nationstar explained that, to enforce its rights as a secured creditor, a foreclosure sale of Ramirez's residence had occurred on August 26, 2015, the day after Ramirez had filed his latest bankruptcy petition. Nationstar sought retroactive relief from the stay – also known as annulment of the stay – to validate its postpetition foreclosure sale. Nationstar also sought prospective relief from the automatic stay pursuant to § 362(d)(4), claiming that

[3]Nationstar and Ramirez already had entered into a prior loan modification agreement in 2010.

4

Ramirez's history of serial bankruptcy filings reflected a scheme by Ramirez to delay Nationstar from exercising its rights as a secured creditor.

In support of its request for retroactive relief, Nationstar submitted evidence indicating that it was unaware of Ramirez's August 25, 2015 bankruptcy filing at the time it conducted the August 26, 2015 foreclosure sale. Nationstar further asserted that it had been attempting to foreclose on Ramirez's residence since 2011, citing a 2011 notice of default and a 2011 notice of sale, which referenced a sale date of December 14, 2011. Nationstar pointed out that Ramirez's first chapter 13 filing, commenced on December 2, 2011, prevented the foreclosure sale from occurring as scheduled. Nationstar also pointed out that it caused to be published another notice of sale in 2014 referencing a sale date of December 3, 2014, and that Ramirez's December 2, 2014 bankruptcy filing prevented that 2014 foreclosure sale from occurring.

In his opposition, Ramirez claimed that he immediately gave Nationstar and its counsel notice of his latest bankruptcy filing but that Nationstar ignored the notices and proceeded with the foreclosure sale despite its knowledge of the automatic stay. According to Ramirez, these facts by themselves were sufficient to justify denial of retroactive relief.

As for prospective relief under § 362(d)(4), Ramirez argued that Nationstar attempted to justify the granting of this relief based solely on his serial bankruptcy filings. According to Ramirez, multiple bankruptcy filings, alone, cannot support a finding of a scheme to hinder, delay or defraud for purposes of

5

§ 362(d)(4). Appellant also asked for an evidentiary hearing so he could present evidence of the notice he gave to Nationstar on August 25, 2015.

At the hearing on the relief from stay motion, the bankruptcy court ruled that Nationstar was entitled to the retroactive and prospective relief requested in its motion. On the issue of stay annulment, the bankruptcy court stated that it had considered the totality of the circumstances and had weighed the factors identified in Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.), 129 F.3d 1052, 1055 (9th Cir. 1997); and in Fjeldsted v. Lien (In re Fjeldsted), 293 B.R. 12, 25 (9th Cir. BAP 2003). The bankruptcy court concluded that the factors militated in favor of annulment.

At the time the bankruptcy court announced its ruling at the hearing, Ramirez renewed his request for an evidentiary hearing on the notice issue, but the bankruptcy court denied that request, stating that the notice issue was beyond the scope of the motion and beyond the scope of the court's reasoning for granting the motion, including retroactive relief.

The bankruptcy court's denial of an evidentiary hearing was made during the course of the following colloquy between the bankruptcy court and Ramirez:

> MR. RAMIREZ: Then can I show you something, that I gave notice to the bank that I file the bankruptcy?
>
> THE COURT: I am going to say no, because that really goes beyond the issue of this motion and the reason I am granting the relief, which includes making it retroactive.
>
> MR. RAMIREZ: I have a document here that I sent to them on the 25th.

6

> THE COURT: Okay. That is the day the foreclosure sale occurred. And what I am saying by this order is, there was no automatic stay in effect on the 25th when the foreclosure occurred.

Hr'g Tr. (Jan. 12, 2016) 8:8-18.

The bankruptcy court's statements made in support of its denial of the evidentiary hearing are at odds with its comments indicating that it had reviewed and considered all of the Fjeldsted factors. Furthermore, the bankruptcy court's written ruling suggests that it did consider the notice issue. The bankruptcy court noted both Nationstar's representation that it was unaware of the latest bankruptcy filing and Ramirez's failure to present evidence to support his notice allegations.

As for prospective, in rem relief, the bankruptcy court stated that it could grant relief under § 362(d)(4) if it found "a scheme to delay, hinder, or defraud creditors" involving either: (a) a transfer of an interest in the subject real property without creditor consent or court approval; or (b) "multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4).

According to the bankruptcy court, the existence of such a scheme by Ramirez was evidenced not only by the number of Ramirez's prior bankruptcy filings but also by his frequent failure to prosecute his bankruptcy cases by filing required documents. The bankruptcy court also emphasized that Ramirez had attempted to "hide" his prior bankruptcy cases from the court. Ramirez attempted this, the court explained, by filing an amended statement of social security number in which he alleged that he had "lost" his social security number – after he earlier had

7

filed in the same case an acknowledgment of his social security number – a number which led the court to Ramirez's prior bankruptcy case filings.

There was one other factor the bankruptcy court pointed to in its ruling granting § 362(d)(4) relief. The bankruptcy court referenced certain transfers Ramirez allegedly made to beneficiaries who then filed bankruptcy in order to stay the foreclosure. As the bankruptcy court put it:

> Movant has provided sufficient evidence concerning a series of bankruptcy cases being filed with respect to the subject property. **The unauthorized transfers of interests in the subject property to beneficiaries who then filed several bankruptcies were a deliberate attempt as a stay to any foreclosure.** The court finds that the filing of the present petition works as part of a scheme to delay, hinder, or defraud Movant with respect to the Property **by both the transfer of an interest in the property and the filing of multiple bankruptcy cases.**

Civil Minutes (Jan 12, 2016) at p. 5 (emphasis added).

This portion of the bankruptcy court's ruling is perplexing. Nationstar neither alleged nor submitted evidence of any such transfers, nor have we found any evidence of such transfers elsewhere during our independent review of the bankruptcy court's docket.

On January 19, 2016, the bankruptcy court entered its order granting Nationstar's stay relief motion, and Ramirez timely appealed.

On January 21, 2016, the underlying bankruptcy case was dismissed on the chapter 13 trustee's motion, based on a number of deficiencies in the prosecution of Ramirez's chapter 13 case, which the bankruptcy court found constituted unreasonable delay

8

under § 1307(c)(1).[4]

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G). An order granting or denying relief from the automatic stay is a final and appealable order, so we have jurisdiction under 28 U.S.C. § 158. See Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.), 96 F.3d 346, 351 (9th Cir. 1996).

**ISSUES**

1. Did the bankruptcy court abuse its discretion when it granted Nationstar relief under § 362(d)(4)?

2. Did the bankruptcy court abuse its discretion when it annulled the stay in order to retroactively validate Nationstar's foreclosure sale?

**STANDARDS OF REVIEW**

We review the bankruptcy court's relief from stay order for an abuse of discretion. Id.; First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.), 470 B.R. 864, 868 (9th Cir. BAP 2012); In re Fjeldsted, 293 B.R. at 18.

A bankruptcy court abuses its discretion if it applies an incorrect legal standard or if its factual findings are

---

[4]Even though Ramirez did not appeal the dismissal order, this appeal is not moot. The order on appeal provided for annulment of the stay and for in rem relief from the stay for a period of two years from the date of entry of the bankruptcy court's relief from stay order. If Ramirez were to prevail on appeal, we could grant him meaningful relief from both the retroactive and prospective effects of the bankruptcy court's relief from stay order.

9

illogical, implausible or not supported by the record. <u>United States v. Hinkson</u>, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

**DISCUSSION**

On appeal, Ramirez, pro se, asserts the same arguments he asserted in the bankruptcy court. First, he claims there was insufficient evidence to support the bankruptcy court's grant of prospective, in rem relief under § 362(d)(4). And second, he claims the bankruptcy court should not have annulled the stay because he gave notice of his bankruptcy filing to Nationstar on the day the foreclosure occurred. We will address each of these claims in turn.

**1.    Section 362(d)(4)**

Under § 362(d)(4), the bankruptcy court may grant a secured creditor prospective, "in rem" relief from the automatic stay if the debtor has engaged in a scheme to delay, hinder or defraud creditors through multiple bankruptcy filings. <u>In re First Yorkshire Holdings, Inc.</u>, 470 B.R. at 870. A properly entered and recorded § 362(d)(4) order prevents – for a period of two years – any subsequent bankruptcy filing by anyone with an interest in the subject property from operating as a stay of lien enforcement against the property. § 362(b)(20); <u>In re First Yorkshire Holdings, Inc.</u>, 470 B.R. at 871.

The broad scope of this exception to the automatic stay potentially can have grave consequences for debtors seeking temporary relief from foreclosure activity. <u>Alakozai v. Citizens Equity First Credit Union (In re Alakozai)</u>, 499 B.R. 698, 703 (9th Cir. BAP 2013). Congress determined that this drastic form

10

of relief was necessary in order to deter schemes by the occasional debtor who filed serial bankruptcies and/or made a series of property transfers for the purpose of interfering with legitimate foreclosure efforts.  Id. at 702; In re First Yorkshire Holdings, Inc., 470 B.R. at 870.

In order to grant § 362(d)(4) relief, a bankruptcy court must find: "(1) the debtor engaged in a scheme, (2) to delay, hinder or defraud the creditor, and (3) which involved either the transfer of property without the creditor's consent or court approval or multiple filings." In re Alakozai, 499 B.R. at 703.

Here, the bankruptcy court articulated the correct legal standard, made ample findings, and cited sufficient evidence to support most of those findings.  In essence, the bankruptcy court determined from Ramirez's multiple bankruptcy cases **and** from the way Ramirez conducted himself in those bankruptcy cases that Ramirez had improperly utilized those cases to interfere with Nationstar's foreclosure efforts.  The bankruptcy court's findings in support of this determination were not clearly erroneous – they were logical, plausible and supported by the record.

On the other hand, we don't know what to make of the bankruptcy court's additional findings that Ramirez engaged in a series of unauthorized transfers of his residence and that these transfers were part of his scheme to hinder, delay or defraud Nationstar.  There were no allegations or evidence in the record reflecting such transfers, so the bankruptcy court's transfer-related findings were clearly erroneous.

Nor are we convinced that the transfer-related findings were

11

harmless error. We simply don't know for sure whether, in the absence of the transfer-related findings, the bankruptcy court still would have inferred Ramirez's scheme to hinder, delay or defraud Nationstar from the remaining findings. On the record presented, such an inference would not have been unreasonable; even so, such an inference was not inevitable.

Under these circumstances, we must vacate the bankruptcy court's grant of § 362(d)(4) relief and remand for a new determination of this issue.

**2.   Stay Annulment**

Actions taken in violation of the automatic stay are void. In re Nat'l Envtl. Waste Corp., 129 F.3d at 1054. However, under § 362(d)(1), the bankruptcy court may "annul" the stay in order to retroactively validate actions that otherwise would be void as stay violations. Id. (citing Schwartz v. United States (In re Schwartz), 954 F.2d 569, 572 (9th Cir. 1992)).

In deciding whether "cause" exists to annul the stay, the bankruptcy court must examine the circumstances of the particular case and balance the equities. In re Nat'l Envtl. Waste Corp., 129 F.3d at 1055; In re Fjeldsted, 293 B.R. at 24. Two factors that have been considered critical in many cases are: (1) whether the creditor was aware of the bankruptcy petition and automatic stay and (2) whether the debtor engaged in unreasonable or inequitable conduct. In re Nat'l Envtl. Waste Corp., 129 F.3d at 1055. But these factors are not always determinative. Id. Each case presents its own unique circumstances that must be evaluated on a case by case basis. Id.

We have identified several other factors that can be

12

relevant in deciding whether to annul the stay:

1. Number of filings;

2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;

3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;

4. The Debtor's overall good faith (totality of circumstances test);

5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;

6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;

7. The relative ease of restoring parties to the status quo ante;

8. The costs of annulment to debtors and creditors;

9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;

10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;

11. Whether annulment of the stay will cause irreparable injury to the debtor;

12. Whether stay relief will promote judicial economy or other efficiencies.

In re Fjeldsted, 293 B.R. at 25 (citations omitted). Here, the bankruptcy court stated that it had reviewed all of these factors and had considered the totality of the circumstances. At the same time, the bankruptcy court's ruling and its hearing comments suggest that it relied heavily on Ramirez's scheme to hinder, delay or defraud Nationstar in finding cause to annul the stay. This is why the bankruptcy court, in finding cause, referenced

13

its findings regarding Ramirez's "transparently purposeful" conduct in "prejudicing" Nationstar's foreclosure efforts and also stated that the underlying bankruptcy case was part of Ramirez's "scheme to prejudice" Nationstar.

As we explained above, the bankruptcy court's clearly erroneous transfer-related findings fatally infected the court's inference of a scheme to hinder, delay or defraud Nationstar. Because the existence of this scheme was a critical factor in the bankruptcy court's determination of cause to annul the stay, we must VACATE the bankruptcy court's grant of retroactive stay relief and must REMAND for a new determination of this issue.

**3. Denial of Ramirez's Request to Present Evidence on Notice Issue**

There is one other issue we need to address. It concerns Ramirez's request in his opposition for an opportunity to present evidence on whether Nationstar had knowledge of the automatic stay at the time it conducted its foreclosure sale. Ramirez renewed this request at the relief from stay hearing, at which point the bankruptcy court denied the request.

Ramirez did not even remotely comply with the requirements for obtaining an evidentiary hearing set forth in Local Rules 9014-1(f)(1)(B)[5] and 9014-1(g)(3).[6] We already have upheld a

_____

[5]Local Rule 9014-1(f)(1)(B) provides in relevant part:

The opposition shall specify whether the responding party consents to the Court's resolution of disputed material factual issues pursuant to Fed. R. Civ. P. 43(c) as made applicable by Fed. R. Bankr. P. 9017. If the responding party does not so consent, the
(continued...)

14

prior version of the Local Rules, which contained similar requirements.  See <u>Tyner v. Nicholson (In re Nicholson)</u>, 435 B.R. 622, 635-36 (9th Cir. BAP 2010), <u>partially abrogated on other grounds by</u>, <u>Law v. Siegel</u>, 134 S.Ct. 1188, 1196-98 (2014).  In addition, Ramirez failed to include with his opposition papers any evidence that would have laid a foundation for a disputed factual issue regarding Nationstar's knowledge of the stay.  This absence of evidence in Ramirez's opposition also violated Local Rule 9014-1(f)(1)(B).

On the other hand, in denying Ramirez's request to present evidence at the relief from stay hearing, the bankruptcy court did not invoke its Local Rules as the basis for the denial. Instead, in denying the request, the bankruptcy court suggested that the notice issue was largely irrelevant.  This comment by

[5](...continued)
opposition shall include a separate statement identifying each disputed material factual issue.  The separate statement shall enumerate discretely each of the disputed material factual issues and cite the particular portions of the record demonstrating that a factual issue is both material and in dispute.  Failure to file the separate statement shall be construed as consent to resolution of the motion and all disputed material factual issues pursuant to Fed. R. Civ. P. 43(c).

[6]Local Rule 9014-1(g)(3) provides:

An opposition and/or reply to a motion shall state whether a party consents to the use of affidavits in accordance with Fed. R. Civ. P. 43(c).  Any party that fails to file the separate statement of disputed material facts as required by LBR 9014-1 will thereby consent to proceed on the basis of the written record without live testimony.

15

the bankruptcy court is difficult to reconcile with the bankruptcy court's statement that, in determining whether to annul the stay, it was considering the totality of the circumstances as well as the Fjeldsted factors. The comment is even harder to reconcile with the notion that the creditor's knowledge of the stay often is one of the most critical factors in determining whether to annul the stay. See In re Nat'l Envtl. Waste Corp., 129 F.3d at 1055.

In any event, because we are remanding on other grounds, we need not resolve this conundrum. On remand, the bankruptcy court should clarify the grounds it is relying upon to support its denial of Ramirez's request to present evidence on the notice issue. Alternately, the bankruptcy court has the option on remand to exercise its discretion to reopen the record and permit the presentation of evidence.[7]

## CONCLUSION

For the reasons set forth above, we VACATE the bankruptcy court's order granting Nationstar relief from the automatic stay, and we REMAND for further proceedings.

---

[7]Also on remand, the bankruptcy court should note that, if it grants retroactive stay relief and validates Nationstar's foreclosure sale, it no longer would be necessary or correct to additionally grant Nationstar relief under § 362(d)(4), because Nationstar no longer would be "a creditor whose claim is secured by an interest in the property in question." See Ellis v. Yu (In re Ellis), 523 B.R. 673, 679-80 (9th Cir. BAP 2014).

16