FILED

DEC 02 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                              )    BAP No.  CC-16-1028-DKiF
                                    )
JOHN K. REED,                       )    Bk.  No.  15-12230-PC
                                    )
                    Debtor.         )
_____)
                                    )
JOHN K. REED,                       )
                                    )
                    Appellant,      )
                                    )
v.                                  )    **M E M O R A N D U M**[1]
                                    )
NEW YORK COMMUNITY BANK,            )
                                    )
                    Appellee.       )
_____)

Argued and Submitted on November 17, 2016
at Pasadena, California

Filed - December 2, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Peter H. Carroll, Bankruptcy Judge, Presiding

_____

Appearances:    Appellant John K. Reed argued pro se; Megan E.
                Lees of Pite Duncan, LLP argued for appellee.

_____

Before: DUNN,[2] KIRSCHER and FARIS, Bankruptcy Judges.

_____

    [1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

    [2] The Hon. Randall L. Dunn, United States Bankruptcy Judge for the District of Oregon, sitting by designation.

Former chapter 13[3] debtor John K. Reed appeals from the bankruptcy court's order granting relief from the automatic stay, including in rem relief, to New York Community Bank. To the extent we have jurisdiction over this appeal, we AFFIRM.

## I. FACTUAL BACKGROUND

Reed purchased a home in Santa Barbara (the "Property") in 2005. The purchase was financed through a loan from Ohio Savings Bank in the original amount of $999,990, memorialized by a note and secured by a deed of trust. After the failure of Ohio Savings Bank, its assets were transferred to the appellant, New York Community Bank (the "Bank"). Apparently, the assets transferred included the note and deed of trust concerning the Property.[4]

Eventually, Reed stopped making payments, and the Bank commenced nonjudicial foreclosure proceedings against the Property. In October 2010, Reed transferred his interest in the Property as a gift to the JKR Olive Trust, an entity under Reed's control.[5] Reed commenced a chapter 13 case in 2011, which was dismissed within three months. He promptly filed a second chapter 13 case, which was dismissed the following year for

---

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

[4] We use the word "apparently" because Reed disputes this proposition.

[5] Reed told the bankruptcy court, "I am JKR Olive Trust."

2

failure to make plan payments.

Meanwhile, while the second chapter 13 case was pending, Reed made additional transfers of ownership interests in the Property. First, he caused the JKR Olive Trust to transfer its interest to Karen Williams as trustee of the JKR Olive Trust,[6] with Reed as its 100% beneficiary. Later, Reed amended the trust documents to name an entity called Lawson-Currell Centre, LLC ("Lawson-Currell") as a 10% beneficiary. Lawson-Currell was, at the time, a chapter 11 debtor in a case pending in the Northern District of California. According to a stipulated order entered in that case, Lawson-Currell had no knowledge that it held any interest in the Property.

After dismissal of his second case, Reed executed another amendment to the JKR Olive Trust, this time naming Bankers For Real Estate, LLC as a 10% beneficiary. Bankers For Real Estate, LLC filed a chapter 11 petition in the Southern District of California shortly thereafter. That case was dismissed, after which another chapter 11 case was commenced, this time by "Bankers 4 Real Estate, LLC" (which listed "Bankers For Real Estate, LLC" as its alias). After four months, this case was dismissed as well.

In 2014, Reed tried unsuccessfully to modify his home loan with the Bank. In 2015, he took a new approach. He wrote to the Bank that he wanted to tender full payment of the amount owing, and he wished to inspect the original note and deed of trust

---

[6] The significance or purpose, if any, of this transfer from the JKR Olive Trust to its own trustee is unclear.

before paying. The Bank agreed to permit the inspection of the note and deed of trust in its possession (the "Loan Documents").

At the agreed time, Reed appeared, accompanied by Dr. James Kelley, an electrical and computer engineer who provides computer forensic examination services. Dr. Kelley spent hours examining the Loan Documents and taking extensive notes. He opined that the documents were fabricated. Reed reported Dr. Kelley's suspicions to various law enforcement authorities, but there is no indication in the record that any official action was taken, and Reed took no legal action of his own regarding the alleged fabrication.

With foreclosure still looming, Reed filed the underlying chapter 13 case (his third) on November 12, 2015. In his schedules, Reed reported no debts and listed $0 in encumbrances against the Property.[7] He asserted he was self-employed as a "facilitator & entertainer" with an average monthly income of $1,550.

In his initial plan, he proposed to make monthly payments of $1,000 (even though he purported to have no creditors) for 36 months "or until resolution of finding unknown creditor." In the provision regarding rejection of executory contracts, Reed proposed to reject "New York Community Bank's claim to be a beneficiary of mortgage." He included a miscellaneous provision

[7] In fact, Reed struck the word "Debtor" every time it appeared on the forms used for his petition, plan and schedules and replaced it with "Petitioner." As he explained in his plan, "Since I have not been able to identify whether or not there is an actual beneficiary [of the trust deed], I have listed myself as a 'petitioner' in this filing."

4

stating his belief that the Bank was not a "legitimate" beneficiary of the deed of trust and that the true beneficiary's identity was unknown. In an amendment to his plan, Reed decreased the proposed monthly payments to $100 but left the other provisions substantively unchanged.

The Bank filed a motion for relief from the automatic stay, seeking to proceed with foreclosure, and for an order granting in rem relief against the Property. The Bank submitted with its motion the declaration of one of its employees, setting forth the history of Reed's transfers of fractional ownership interests in the Property. The Bank further stated that Reed had failed to make his most recent payment on the deed of trust, which had come due following the petition date.

Reed filed an opposition to the Bank's motion, accompanied by a declaration and a voluminous set of exhibits. In his declaration, Reed denied that his current bankruptcy filing was part of a scheme to hinder, delay or defraud creditors. He admitted, however, that his filings were made to prevent foreclosure, which he described as the attempted "theft" of the Property. Included in the attachments to Reed's declaration were copies of an affidavit signed by Dr. Kelley and an accompanying report, in which Dr. Kelley expressed his opinion that the Loan Documents were not genuine. Reed also argued in his opposition that he received insufficient notice of the upcoming hearing on the relief from stay motion.

Nevertheless, Reed appeared at the hearing, and the bankruptcy court rejected his insufficient notice argument, noting that Reed obviously had time to file a detailed opposition

5

and was present in court. The court explained that stay relief proceedings were summary, and relief could be granted upon the Bank's showing that it had a colorable claim to an interest in the Property and that its interest was not adequately protected due to missed payments. The Bank had done this by submitting a declaration from its employee stating that the Bank possessed the original Loan Documents, of which it was the proper beneficiary. The court excluded the statements in Dr. Kelley's report as unauthenticated hearsay.[8] In any event, the Bank was not required to provide definitive proof of its status as beneficiary, but merely to set forth a colorable claim.

As to the request for in rem relief, the bankruptcy court noted that Reed effectively conceded the necessary facts when he admitted making multiple transfers of the Property and filing multiple cases for the purpose of preventing foreclosure. The court thus found that Reed had filed the instant case in bad faith for the purpose of hindering, delaying or defrauding the Bank. The court entered an order granting relief from stay, including in rem relief. Reed appealed.

The bankruptcy court later dismissed Reed's chapter 13 case. Reed did not appeal the dismissal.[9]

---

[8] The bankruptcy court noted that an affidavit was included with Dr. Kelley's report, but Dr. Kelley had not submitted an independent declaration to the bankruptcy court.

[9] We exercise our discretion to take judicial notice of the bankruptcy court's electronic docket. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood),
(continued...)

6

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(2)(G). With the qualifications discussed below, we have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Whether this appeal is moot.

2. Whether the bankruptcy court abused its discretion by granting in rem relief.

3. Whether the bankruptcy court denied Reed's constitutional rights by holding a hearing on insufficient notice.

## IV. STANDARDS OF REVIEW

We review our own jurisdiction de novo. Franklin High Yield Tax-Free Income Fund v. City of Stockton, Cal. (In re City of Stockton, Cal.), 542 B.R. 261, 272 (9th Cir. BAP 2015). An order granting in rem relief under § 362(d)(4) is reviewed for abuse of discretion. Ellis v. Yu (In re Ellis), 523 B.R. 673, 677 (9th Cir. BAP 2014). A bankruptcy court abuses its discretion if it applies the wrong legal standard, or if its application of the correct legal standard is based on a view of the evidence that is illogical, implausible or unsupported by the record. United States v. Hinkson, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

## V. DISCUSSION

### A. Mootness

The Bank moved to dismiss this appeal for constitutional and

---

[9](...continued)
293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

equitable mootness. A motions panel denied the motion to dismiss but limited the scope of the appeal to the issue of in rem relief. In its brief on appeal, the Bank renewed its argument that the appeal should be dismissed. As explained more fully below, we agree with the motions panel that dismissal is not warranted, but the scope of the appeal must be limited to the in rem issue.

Generally speaking, there are two varieties of mootness that apply in bankruptcy appeals. First, an appeal is constitutionally moot if circumstances have changed such that the appellate tribunal is incapable of granting relief. Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869, 880 (9th Cir. 2012). Second, an appeal is equitably moot if the order on appeal involves complex transactions or the rights of non-parties such that, although relief is possible, granting it would be inequitable. JPMCC 2007-C1 Grasslawn Lodging, LLC v. Transwest Resort Props., Inc. (In re Transwest Resort Props., Inc.), 801 F.3d 1161, 1167 (9th Cir. 2015).

Because Reed's underlying bankruptcy case has been dismissed, the Bank argues that the appeal is constitutionally moot. Under most circumstances, we would agree. Once the underlying case was dismissed, the automatic stay terminated by operation of law. The dismissal of the case is not on appeal, and we are without jurisdiction to reinstate the bankruptcy case, even if we believed it would be proper to do so. Reversing the order granting stay relief would not reimpose the stay or prevent the Bank from foreclosing.

8

The flaw in the Bank's argument, however, is the in rem provision in the stay relief order. When a bankruptcy court grants in rem relief under § 362(d)(4), and the order is recorded in accordance with state law, it removes the subject property from the protection of the automatic stay not only in the current case, but in all subsequent bankruptcy cases, regardless of who files them, for the following two years. See § 362(b)(20). Therefore, as the Bank's counsel acknowledged at oral argument, the dismissal of Reed's current bankruptcy case does not prevent us from granting some effective relief in the event Reed prevails on the merits of his appeal. It is entirely possible that Reed or someone else claiming an interest in the Property will file another bankruptcy case before the two-year period expires.

With respect to equitable mootness, the Ninth Circuit has developed a four-factor test for determining whether an appeal should be dismissed. We must consider: (1) whether a stay was sought, and if so, whether it was obtained; (2) whether substantial consummation has occurred; (3) the effect a remedy would have on the interests of non-parties; and (4) whether any remedy can be granted without creating an unmanageable situation before the bankruptcy court on remand. In re Transwest Resort Props., Inc., 801 F.3d at 1167-68 (citing In re Thorpe Insulation Co., 677 F.3d at 881).

The Bank's equitable mootness argument appears to hinge entirely on Reed's failure to seek a stay. The Bank concedes that no non-parties appear to have any interest in the outcome of this appeal, and we are at a loss to imagine how reversal of the in rem order would present the bankruptcy court with an

9

unmanageable situation on remand. As to the second element, "substantial consummation" is a concept that relates to the confirmation of plans of reorganization. Because this appeal relates to stay relief, rather than plan confirmation, the appropriate consideration appears to be whether the Bank has completed its foreclosure. The Bank's counsel represented at oral argument that no foreclosure sale has taken place.

It is true that failure to seek a stay pending appeal weighs in favor of a finding of equitable mootness. In re Transwest Resort Props., Inc., 801 F.3d at 1168. But such failure does not **always** render an appeal moot. Equitable mootness is not a punishment for choosing not to seek a stay. The Ninth Circuit has consistently held that equitable mootness applies only where the order on appeal relates to "complex" transactions that are "difficult to unwind." Id. at 1167, quoting Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.), 771 F.3d 1211, 1215 n.2 (9th Cir. 2014). The in rem order does not present such a situation.

For these reasons, we conclude that the appeal is neither constitutionally nor equitably moot in its entirety, but its scope remains limited to the in rem aspect of the order on appeal.

**B. The Stay Relief Order**

**1. Standing**

Throughout his briefs, Reed questions the Bank's "standing." Standing is a threshold jurisdictional issue. Veal v. American Home Mtg. Servicing, Inc. (In re Veal), 450 B.R. 897, 906 (9th Cir. BAP 2011). If we were to conclude the Bank lacked standing before the bankruptcy court, it would follow that the court

10

lacked jurisdiction to grant in rem relief. Id. For the most part, however, Reed's "standing" arguments do not relate to this jurisdictional issue.

Instead, by arguing the Bank lacks "standing," Reed primarily appears to mean that the Bank does not have the right to foreclose, because the Loan Documents allegedly are invalid. But the Bank's standing to request stay relief did not depend on any conclusive determinations regarding the validity of the Loan Documents. As the Ninth Circuit has explained, "hearings on relief from the automatic stay are . . . handled in a summary fashion. . . . The validity of the claim or contract underlying the claim [here, the Loan Documents] **is not litigated** during the hearing." Johnson v. Righetti (In re Johnson), 756 F.2d 738, 740 (9th Cir. 1985) (emphasis added, internal citation omitted). The bankruptcy court did not make a final determination of the validity of the Loan Documents or the Bank's right to foreclose. The court merely concluded that the Bank had a colorable claim and removed one obstacle - the automatic stay - standing in the way of foreclosure.

Because the Bank's right to foreclose was not directly at issue in the stay relief proceeding, the Bank was not required to prove that right definitively in order to establish standing. Indeed, the requirements for standing to seek stay relief are "lenient." In re Veal, 450 B.R. at 913. If a party has a "colorable claim" to enforce a right against estate property, that party has standing to seek stay relief. Id. at 914. More generally, any creditor whose "interests would be harmed by continuance of the stay" may seek relief. Kronemyer v. Am.

11

Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 921 (9th Cir. BAP 2009).

By submitting a declaration from its employee to authenticate the attached Loan Documents, the Bank established a colorable claim to its asserted right to foreclose and thus established standing to seek stay relief. Because the stay prevented the Bank from pursuing foreclosure proceedings, the Bank's interests were harmed by continuance of the stay. This is true whether or not the Bank ultimately prevails in the foreclosure proceedings, which - we stress again - is a separate question that neither the bankruptcy court nor we must decide.

The Bank had standing to request stay relief.

### 2. **In rem relief**

Section 362(d)(4) was added to the Bankruptcy Code in 2005 "to address schemes using bankruptcy to thwart legitimate foreclosure efforts through one or more transfers of interest in real property." First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.), 470 B.R. 864, 870 (9th Cir. BAP 2012). Once in rem relief is granted, if the order is recorded in accordance with applicable state law, the subject property is excluded from the protection of the automatic stay in any bankruptcy case filed within the following two years. This prevents a debtor from circumventing a stay relief order by simply filing another case or transferring the property to another debtor. An in rem order grants "prospective protection against not only the debtor, but also every non-debtor, co-owner, and subsequent owner of the property." Id. at 871.

Because this relief has serious implications, it is

12

available only when the bankruptcy court makes affirmative findings that three elements are present: (1) the debtor filed the current case as part of a scheme; (2) the object of the scheme is to hinder, delay or defraud creditors; and (3) the scheme involves either unauthorized transfers of the property or multiple bankruptcy filings affecting the property. Id. at 870-71.

The bankruptcy court made the necessary findings to support in rem relief. Specifically, it found that Reed caused multiple transfers of the Property without the Bank's authorization, that he filed or caused to be filed multiple cases involving the Property, and that he did these things for the purpose of preventing, i.e., hindering, the Bank from foreclosing. Though the court did not use the word "scheme" to describe Reed's actions, the stated findings leave us in no doubt that the court found this element to be present.[10]

The record supports all of these findings. Indeed, Reed admitted the necessary facts in his own declaration: "I declare that this filing and all previous filings have been done for the sole purpose of trying to protect myself from the theft of my property." It is clear from the context that the "theft" to which Reed referred was the Bank's foreclosure.

---

[10] The bankruptcy court found that the various transfers and filings were "done for the sole purpose of trying to protect the Debtor from [what he considered to be] the theft of his property." Based on Reed's history of filings, the court further found that he did not file the present case in good faith. The finding of a persistent, purposeful effort to accomplish a goal that is pursued in bad faith satisfies the "scheme" element of § 362(d)(4).

13

Reed obviously believes that the Bank has no right to foreclose, that it has violated state law by attempting to do so, and that he therefore is morally justified in trying to stop the foreclosure. These beliefs, however earnestly held, do not exempt him from the application of § 362(d)(4). If the Bank has done anything to violate the law in relation to the Property, it is incumbent upon Reed to raise that argument in a forum capable of entertaining it.[11] Repeatedly invoking the automatic stay, without any apparent intention of restructuring debts or obtaining a discharge, is not a legitimate alternative.

The bankruptcy court did not abuse its discretion by granting in rem relief.

**C.    Due Process**

Finally, we must address Reed's arguments that the procedures employed by the bankruptcy court violated his constitutional right to due process of law.[12]

Reed argued before the bankruptcy court that he received insufficient notice of the stay relief proceeding, because he received the notice and motion less than 20 days before the

---

[11] The parties represented at oral argument that Reed recently commenced civil litigation against the Bank in relation to the Loan Documents.

[12] Reed refers to both due process and equal protection of the laws, but he does not raise any specific arguments relating to equal protection. We address all of Reed's constitutional arguments under the rubric of due process.
Reed also suggests in his opening brief that his due process rights were violated in connection with the dismissal of his bankruptcy case. This appeal pertains only to the order granting stay relief. The order dismissing the case was not appealed, and we have no jurisdiction to review it.

14

hearing. We agree with the bankruptcy court, based on the Bank's certificate of service, that proper notice was provided. More importantly, the fact that Reed was able to prepare a lengthy opposition to the motion demonstrates that he had sufficient notice of the proceeding. The Constitution requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the action and afford them an opportunity to present their objection." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950); Espinosa v. United Student Aid Funds, Inc., 553 F.3d 1193, 1202 (9th Cir. 2008), aff'd sub nom United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260 (2010). When a party receives actual notice, this standard is satisfied. Id. at 1203. Reed both responded to the motion and appeared at the hearing. He does not identify anything more he would have done if he had received notice earlier.

Next, Reed argues that the bankruptcy court violated his due process rights by "ignoring" Dr. Kelley's report, which Reed attached to his declaration. In fact, the bankruptcy court did not ignore the report but rather excluded it on grounds of hearsay and lack of proper authentication. More importantly, as discussed above, the bankruptcy court was not required to make any conclusive findings as to the validity of the Loan Documents. It therefore was not necessary for the bankruptcy court to consider Dr. Kelley's unauthenticated opinion on that subject.[13]

---

[13] Prior to oral argument, Reed submitted an addendum to his briefs on appeal, to which he attached a new declaration from Dr. Kelley. This declaration was not before the bankruptcy court
(continued...)

15

We do not perceive any due process violation in the decision to exclude the report.

Otherwise, Reed argues that his "right to an unbiased tribunal" somehow was violated. He does not articulate any basis for concluding that the bankruptcy court was biased, apart from the fact that it ruled against him and in favor of the Bank. "[J]udicial rulings alone almost never constitute a valid basis" for demonstrating bias. Liteky v. United States, 510 U.S. 540, 555 (1994). Our review of the record discloses no basis for questioning the bankruptcy court's impartiality.

## VI. CONCLUSION

Based upon the foregoing, we conclude that the bankruptcy court did not abuse its discretion or otherwise err in entering the in rem order. We AFFIRM.

---

[13](...continued) and is not part of the record on appeal. Accordingly, we do not consider it. See Wilcox v. Parker (In re Parker), 477 B.R. 570, 577 n.10 (9th Cir. BAP 2012) (declining to consider documents not presented to the bankruptcy court).